[No. 72441-5. En Banc.]
Argued October 24, 2002. Decided December 19, 2002.

THE STATE OF WASHINGTON, *Petitioner*, v. JERMAINE T. BEAVER, *Respondent*.

*Gerald A. Horne, Prosecuting Attorney,* and *Kathleen Proctor* and *Barbara L. Corey-Boulet, Deputies,* for petitioner.

*Pattie Mhoon,* for respondent.

*Christine O. Gregoire, Attorney General,* and *Linda A. Sullivan-Colglazier, Assistant,* on behalf of Department of Social and Health Services, amicus curiae.

BRIDGE, J. — Jermaine T. Beaver pleaded guilty to conspiracy to commit second degree murder in juvenile court and was given a manifest injustice disposition of confinement until the age of 21 without the possibility of early release. Beaver appealed his disposition to the Court of Appeals, asserting that by statute only the Department of Social and Health Services (DSHS) has the authority to set a juvenile offender's minimum term. The Court of Appeals

agreed, vacated Beaver's minimum sentence, and remanded the case for DSHS to set Beaver's minimum term. We reverse.

I

On August 19, 2000, Beaver and seven other young people decided to find and beat someone up. As the group was discussing who should receive the beating, Erik Toews came into sight and ultimately became the victim. One of the members of the group approached Toews and asked him for a cigarette. While Toews was distracted, another member of the group " 'socked [him] in the jaw.' "[1] The group then proceeded to attack, rob, and beat Toews with their fists, feet, and a stick, causing him to fall into a deep coma. Six days later, Toews died from his injuries.[2]

Beaver, three months shy of his 16th birthday, was charged with murder in the first degree and robbery in the first degree in Pierce County Juvenile Court. In compliance with his plea agreement, Beaver pleaded guilty to one count of conspiracy to commit murder in the second degree. The standard sentencing range for this charge is 15 to 36 weeks of confinement in a juvenile institution.[3] Pursuant to the plea agreement, Beaver, with the advice of counsel, agreed to the imposition of a manifest injustice disposition. The State and Beaver jointly recommended to the juvenile court judge a manifest injustice disposition of 208 weeks (the equivalent of four years).[4] Beaver's probation officer, Christal Davis, was initially in support of this joint recommendation. However, after interviewing Beaver the morning of his disposition hearing, Davis changed her recom-

---

[1] Clerk's Papers (CP) at 3.

[2] *Id.*

[3] *See* RCW 13.40.0357 (Option A).

[4] If a court finds that a standard disposition would "effectuate a manifest injustice, the court shall impose a disposition outside the standard range under RCW 13.40.160(2)." RCW 13.40.0357 (Option C). The court's finding of manifest injustice must be supported by clear and convincing evidence. RCW 13.40.160(2).

mendation to a manifest injustice disposition until age 21 because of the serious nature of the crime and because in her view, Beaver continued to deny responsibility for and to minimize the consequences of his actions. At the disposition hearing, the judge agreed with Davis and sentenced Beaver to the "Department of JRA [Juvenile Rehabilitation Administration] until he's 21."[5] Beaver did not appeal his manifest injustice disposition.

A month later, at the request of DSHS,[6] Beaver's sentencing matter was returned to juvenile court. DSHS presented problems interpreting the disposition language, which required by its terms that Beaver was to be confined "until age 21."[7] DSHS was uncertain whether the disposition language was also setting a minimum term or whether the juvenile court wanted DSHS to set the minimum term. The juvenile court judge stated that his intention was for Beaver not to be released prior to his 21st birthday. Therefore, the disposition language set both the minimum and maximum term. The juvenile court judge determined that the original disposition was unambiguous; however, he entered an amended order restating his intention.

Beaver challenged the disposition in an appeal to Division Two of the Court of Appeals. Beaver maintained that DSHS has the sole authority to set a juvenile offender's release date or minimum term. In its published opinion,[8] Division Two of the Court of Appeals agreed with Beaver and remanded the case for DSHS to set the minimum term.[9] The State sought discretionary review of the Court of Appeals' decision.

---

[5] Record of Proceedings (RP) at 28.

[6] JRA is an agency within DSHS.

[7] CP at 10.

[8] *State v. Beaver*, 110 Wn. App. 519, 41 P.3d 1222 (2002).

[9] *Id.* at 523.

## II

*Minimum Term and Release Date: Two Distinct Terms*

The Court of Appeals concluded that, since under RCW 13.40.210(1) it is the function of DSHS to set a juvenile's release date, DSHS has the authority to set a juvenile's minimum term. The State argues that the Court of Appeals erred in this conclusion by using "minimum term" and "release date" interchangeably. We agree.

■ A legislative body is presumed not to use nonessential words. *State v. Lundquist*, 60 Wn.2d 397, 403, 374 P.2d 246 (1962). In reviewing an ordinance or statute, we are bound to give meaning, if possible, to every word contained in it. *Id.* When the legislature uses different words within the same statute, we recognize that a different meaning is intended. *Haley v. Highland*, 142 Wn.2d 135, 147, 12 P.3d 119 (2000).

■ The words "minimum term" and "release date" are found throughout the Juvenile Justice Act of 1977, chapter 13.40 RCW,[10] and have also been used within the same paragraph in a statute. Former RCW 13.40.210 (1994), which governs the setting of the release date, states in relevant part:

> (1) The [DSHS] secretary shall . . . set a *release or discharge date* for each juvenile committed to its custody. . . . Such dates shall be determined prior to the expiration of sixty percent of a juvenile's *minimum term* of confinement included within the prescribed range to which the juvenile has been committed.

LAWS OF 1994, 1st Sp. Sess., ch. 7, § 527[11] (emphasis added). This example alone makes clear that "release date" and "minimum term" have two separate meanings and that the

---

[10] The intent of the act is to establish "a system capable of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders." RCW 13.40.010(2).

[11] The language quoted is from the former version (1994) of RCW 13.40.210, which was in effect at the time of Beaver's disposition. RCW 13.40.210 was amended in 2001.

only synonymous terms are "release" and "discharge." From the plain reading of the statute, it is apparent that it is the function of DSHS to set the release or discharge date.[12] It is equally apparent that a minimum term must first be in existence before a release or discharge date is set. Although it is conceivable that the minimum term may be the same date as the release date, it is not always the case nor should it be presumed to be. *See In re Pers. Restraint of Tapley*, 72 Wn. App. 440, 448, 865 P.2d 12 (1994) ("[A] juvenile's release date may be set at the minimum, maximum, or anywhere in between.").

Treating the terms synonymously, the Court of Appeals framed the issue in this case as whether DSHS has the exclusive authority to set a juvenile's minimum term under RCW 13.40.210(1). *State v. Beaver*, 110 Wn. App. 519, 522-23, 41 P.3d 1222 (2002). Yet, RCW 13.40.210 deals specifically with the setting of the juvenile's *release date*. The Court of Appeals' interpretation of the statute blurs the distinction between the two terms. The function of setting a minimum term should not be confused with the statutory authority of DSHS to set the release date of juveniles in confinement.

*Setting the Minimum Term for a*
*Manifest Injustice Disposition*

 Statutory interpretation is a question of law. Therefore, our review is de novo. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). In interpreting the Juvenile Justice Act of 1977, we "must examine the statute as a whole and avoid narrow, overly strict interpretations that defeat the intent of the Legislature." *State v. Riles*, 135 Wn.2d 326, 341-42, 957 P.2d 655 (1998). If the statute is

---

[12] Precedent case law has also held that it is the function of DSHS to set the release date of juveniles placed in its facilities. "The Legislature plainly vested [DSHS] with the discretionary authority to determine a juvenile offender's release date in accordance with procedures promulgated by the Department." *State v. Bourgeois*, 72 Wn. App. 650, 660, 866 P.2d 43 (1994). Furthermore, the legislative history to RCW 13.40.030 states, "[t]he Department [DSHS] must set a release date for any juvenile sentenced to confinement . . . ." 1977 FINAL LEGISLATIVE REPORT, 45th Wash. Leg., Reg. Sess. at 39.

clear on its face, its meaning will be procured from the plain language of the statute. *Watson*, 146 Wn.2d at 954. The statute is unclear if it can be reasonably interpreted in more than one way. *Id.* at 955. It is not, however, ambiguous simply because different interpretations are plausible. *Id.*

When sentencing a juvenile offender, the juvenile court must impose a standard range disposition unless the court finds that the imposition of a standard range sentence would effectuate a manifest injustice. *See* RCW 13.40.0357 (Option C); RCW 13.40.160(2). A juvenile committed under a standard range disposition order is sentenced to an indeterminate sentence range as set by statute, whereby the low end of the range represents the minimum term and the high end represents the maximum term of confinement. RCW 13.40.0357 (Option A). A finding that a disposition within a standard range would effectuate a manifest injustice, however, vests the juvenile court " 'with broad discretion' in determining the appropriate sentence to impose." *State v. B.E.W.*, 65 Wn. App. 370, 375, 828 P.2d 87 (1992) (quoting *State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989)). In rendering a manifest injustice sentence, the court sentences the juvenile to a maximum term while the minimum term is set using RCW 13.40.030(2). RCW 13.40.160(2). The issue at hand is to decide *who* sets the minimum term. Beaver contends that this is a function of DSHS, whereas the State believes it is a judicial duty.

By its plain language, RCW 13.40.210 does not apply to manifest injustice dispositions.[13] To correctly determine the authority for setting the minimum term, the

---

[13] *See State v. S.H.*, 75 Wn. App. 1, 15, 877 P.2d 205 (1994) ("This section [RCW 13.40.210(1)] by its own terms does not apply to manifest injustice dispositions."). Further, the former version of RCW 13.40.210 provides that the DSHS secretary sets the release date "except in the case of a juvenile committed . . . to a term . . . outside the appropriate standard range." LAWS OF 1994, 1st Sp. Sess., ch. 7, § 527(1). The current version of RCW 13.40.210 is clearer because it provides that DSHS sets the release date for each juvenile committed to its custody, within the prescribed range under RCW 13.40.0357 (standard range sentence) or RCW 13.40.030 (sentence outside standard range). *See* RCW 13.40.210(1). Even so, the current version contemplates that the range (minimum term and maximum term) has already been set.

appropriate statutes to examine are RCW 13.40.160 and RCW 13.40.030. RCW 13.40.160 states in relevant part:

(2) If the court concludes, and enters reasons for its conclusion, that disposition within the standard range would effectuate a manifest injustice the court shall impose a disposition outside the standard range, as indicated in option C of RCW 13.40.0357. The court's finding of manifest injustice shall be supported by clear and convincing evidence.

A disposition outside the standard range shall be determinate and shall be comprised of confinement or community supervision, or a combination thereof. *When a judge finds a manifest injustice and imposes a sentence of confinement exceeding thirty days, the court shall sentence the juvenile to a maximum term, and the provisions of RCW 13.40.030(2) shall be used to determine the range.* A disposition outside the standard range is appealable under RCW 13.40.230 by the state or the respondent.

(Emphasis added.) In turn, RCW 13.40.030 states in relevant part:

(2) The permissible ranges of confinement resulting from a finding of manifest injustice under RCW 13.40.0357 are subject to the following limitations:

(a) Where the maximum term in the range is ninety days or less, the minimum term in the range may be no less than fifty percent of the maximum term in the range;

(b) Where the maximum term in the range is greater than ninety days but not greater than one year, the minimum term in the range may be no less than seventy-five percent of the maximum term in the range; and

(c) *Where the maximum term in the range is more than one year, the minimum term in the range may be no less than eighty percent of the maximum term in the range.*

(Emphasis added.)

Neither RCW 13.40.160 nor RCW 13.40.030 specifically designates the authority for setting the minimum term for a juvenile confined to a manifest injustice disposition. However, it may reasonably be inferred from RCW 13.40.160 that manifest injustice sentence dispositions are

the sole function of the juvenile court. In fact, neither DSHS nor its secretary is mentioned in RCW 13.40.160, indicating that DSHS does *not* have a role in setting the range for a manifest injustice disposition.

The history of the Juvenile Justice Act of 1977 is in accord with this interpretation. When the Juvenile Justice Act was first established, the manifest injustice disposition exception contained no limitations on the court's discretion. The language of the original statute stated:

> If the court finds that a disposition within the standard range would effectuate a manifest injustice, the court may impose a disposition outside the range but only after it enters reasons upon which it bases its conclusion that disposition within the standard range would effectuate a manifest injustice.

LAWS OF 1977, 1st Ex. Sess., ch. 291, § 70(1) (RCW 13-.40.160). However, once it became apparent that consistency and standardization of juvenile sentencing were potentially compromised by such broad discretion, the statute was amended to include limitations on the calculation of the manifest injustice disposition range. Thus, in 1979, the legislature included in RCW 13.40.160 the cross-reference to RCW 13.40.030 requiring that manifest injustice sentences be tied to the same sentencing scheme as that of standard sentences. LAWS OF 1977, ch. 155, § 68(1). The cross-reference to RCW 13.40.030 does not transfer authority for manifest injustice dispositions from the judiciary to DSHS. RCW 13.40.160 and RCW 13.40.030 are clear and unambiguous. We conclude that the legislature has always intended for the juvenile court judge to have discretion in determining a manifest injustice disposition, but with certain limitations as provided by RCW 13.40.030.

### *No Usurpation of DSHS's Legislative Authority to Set the Release Date*

Beaver contends that the trial court usurped the legislative authority of DSHS to determine the release date

by setting his minimum term equal to the maximum term. If Beaver is confined in the juvenile facility until his 21st birthday, without the possibility of early release, Beaver believes this sentence would preclude "DSHS from exercising its statutory authority to release [him] after he had served 80% of the sentence imposed." Resp't's Suppl. Br. at 5. However, RCW 13.40.030(2)(c) mandates only that the minimum term for a manifest injustice may be *no less than 80 percent* of the imposed maximum term. There is no mandate that states the minimum term must be set exactly at the 80 percent point. Essentially, the juvenile court has the discretion of setting the minimum term at 85 percent, 90 percent, or even 100 percent of the maximum term.

Next, Beaver relies on *State v. Sledge*, 133 Wn.2d 828, 947 P.2d 1199 (1997), *State v. S.H.*, 75 Wn. App. 1, 877 P.2d 205 (1994), and *State v. Bourgeois*, 72 Wn. App. 650, 866 P.2d 43 (1994) to argue that if the juvenile court is allowed to set the minimum term equal to the maximum term for a manifest injustice disposition, DSHS's authority to set the release date is nullified because the juvenile court will take into consideration the fact that the juvenile could be released early. Resp't's Suppl. Br. at 5. In *Sledge*, *S.H.*, and *Bourgeois*, each defendant argued that it was error for the juvenile court to consider possible early release in determining the length of a manifest injustice disposition. *See Sledge*, 133 Wn.2d at 844; *S.H.*, 75 Wn. App. at 15; *Bourgeois*, 72 Wn. App. at 661. The record of proceedings for *Sledge*, *S.H.*, and *Bourgeois* demonstrated that the juvenile courts in those cases explicitly discussed the possibility of each juvenile's release. *Sledge*, 133 Wn.2d at 833-37; *S.H.*, 75 Wn. App. at 7; *Bourgeois*, 72 Wn. App. at 652-55. The sentences were imposed because the judges wanted to make sure each juvenile would remain in the correction facilities for a determinate period of time. Ultimately, these three cases held that the possibility a juvenile may be released before the maximum term of a standard range disposition is not a proper basis for finding manifest injustice. *See Sledge*, 133 Wn.2d at 846; *S.H.*, 75 Wn. App. at 15; *Bourgeois*, 72 Wn. App. at 661.

Beaver's case, however, is distinguishable from *Sledge*, *S.H.*, and *Bourgeois*. Although Beaver contends that he was sentenced to the age of 21 because the trial court took into consideration the fact that he may be released early,[14] the record of proceedings shows otherwise. Beaver agreed to a manifest injustice sentence. RP at 10, 18-23. Nowhere did the trial court consider early release as a factor to impose a manifest injustice disposition until the age of 21.[15]

---

[14] Resp't's Suppl. Br. at 5.

[15] In handing down Beaver's disposition, Judge Bryan E. Chushcoff orally stated:

Well, one thing that disturbs me, at least, is that it does appear to me that Mr. Beaver has made every wrong decision possible that he can make here. If Ms. Masumoto's [prosecuting attorney] recitation of the State's probable cause is accurate, Mr. Beaver, though he did not participate in other assaults that apparently this group is alleged to have inflicted on a number of people in the city over a period of time, *was* aware that they intended to assault people that night because, at least according to Ms. Masumoto's records here, this was something that was discussed before they left to go out on the street to do just that. That Mr. Beaver was present when the conversation went on, and he knew about it. That they left, that they encountered a man and two other people moving some things. Their intention initially was to assault those people, at least one of them, and they decided not to because it was a busy street. Essentially, I guess, too many witnesses. Those two events, it does seem to me, put Mr. Beaver on notice of what was going on here.

Now, as far as I can tell, Mr. Beaver has never acknowledged that he knew about any of those things. Then, finally, they did encounter Mr. Toews and they did assault him. Again, according to Ms. Masumoto's report, other individuals indicated that Mr. Beaver kicked the victim when he was on the ground, and another individual indicated that Mr. Beaver admitted punching the victim.

Now, I will assume for the sake of all this that Mr. Beaver did not intend that Mr. Toews lose his life that night, but it does appear to be fairly plain that Mr. Beaver agreed to participate in a strong-arm robbery. When that happens, the consequence that one can anticipate is that people can be seriously injured or killed, and that's the decision Mr. Beaver made that night, to take that risk. And when that occurs, there is a consequence, and that's why we are here today.

I'm sure indeed, that Mr. Toews's family would like to have him back, and we can't do that. I wish that we could. But I think that part of their anguish here has not to do just with that. I think what it has to do with is they would like some sense that the people who perpetrated this had some empathy both for what Mr. Toews went through in this very brutal attack and for what the family and the community suffered. They also are injured: the family when they lose a cherished member of their family, and the community when they lose a productive member of the community. There has been no sense here in which, it seems to me, Mr. Beaver has felt or communicated that he understands or feels both that Mr. Toews went through this and that the community and his family have gone through this. He continues to minimize and avoid and

## III

The "release date" and "minimum term" are two distinct terms. It is the function of DSHS to set the release date for all juveniles confined to its facilities. However, it is the function of the juvenile court to set the minimum term for a manifest injustice disposition. Nothing in RCW 13.40.030 prohibits the juvenile court judge from setting a minimum term equal to the maximum term.

The Court of Appeals is reversed, and the juvenile court's disposition of confinement until the age of 21 is affirmed.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, and OWENS, JJ., concur.

[No. 71681-1. En Banc.]
Argued May 23, 2002. Decided January 9, 2003.

deny what he's done here. Rather than accepting that, there is a suggestion that *he* is the one who is being unfairly treated. I don't think so.

I agree with Ms. Davis that he should be committed to the Department of JRA until he's 21. Based upon the stipulation of the parties, the court will find there is a manifest injustice here. $100 crime victim penalty assessment. Credit for 120 days served. Other standard conditions.

RP at 26-28. This clearly indicates that the issue of early release was not considered when the juvenile court imposed the manifest injustice sentence.