229 P.3d 847 (2010)
STATE of Washington, Appellant,
v.
Richard Charles TRACER, Respondent.
Nos. 37812-4-II, 37939-2-II, 37892-2-II.
Court of Appeals of Washington, Division 2.
March 16, 2010.
*849 Pamela Beth Loginsky, Washington Assoc. of Prosecuting Atty., Olympia, WA, for Appellant.
Richard Llewellyn Davies, Attorney at Law, Port Townsend, WA, Thomas E. Weaver Jr., Attorney at Law, Bremerton, WA, for Respondent.
*850 Noah Harrison, Port Townsend, WA, pro se.
QUINN-BRINTNALL, J.
¶ 1 According to his defense attorney, on May 25, 2007, Richard Charles Tracer collided with another vehicle after the car he was driving was hit by a meteor. Tracer's counsel told the Jefferson County Superior Court that because it was the meteor and not Tracer's .13 blood alcohol level that caused the collision, the special deputy prosecutor appointed to handle the case had agreed to allow Tracer to plead guilty to driving while under the influence (DUI). When the special prosecutor[1] appointed to handle the case did not appear, Superior Court Judge Craddock Verser appointed a local defense counsel special deputy prosecutor for the case directing that he make the motions necessary to accept Tracer's proffered guilty plea. Jefferson County Prosecutor Juelanne Dalzell appeals from the judgment and sentence entered on Tracer's guilty plea to DUI with a blood alcohol content (BAC) of less than .15.
¶ 2 The parties present a host of novel legal issues, including (1) the State's right to appeal; (2) limits on the judicial appointment of special prosecutors, and the qualifications, authority, and compensation of judicially appointed special prosecutors; and (3) whether principles of due process and double jeopardy prohibit remand for further proceedings in this case. We hold that (1) the State has a right to appellate review of the removal without notice of a duly appointed special deputy prosecuting attorney as well as the substitution of a defense attorney to perform special prosecuting attorney duties in accord with the trial court's directions; (2) the trial court lacked authority to appoint the substitute special prosecuting attorney in this case and to award him compensation; and (3) because the actions of the improperly appointed special prosecutor were conducted without lawful authority, neither due process nor double jeopardy prohibit a remand for further proceedings before a different trial judge. Accordingly, we reverse and remand.

FACTS
¶ 3 According to Tracer's defense counsel, an accident reconstructionist determined that on May 25, 2007, Tracer collided with another vehicle after the car he was driving was hit by a meteor. Defense counsel acknowledged that Tracer's BAC level measured .13; nevertheless, she told Judge Verser that because it was the meteor and not the alcohol that caused the collision, the State's special deputy prosecutor had agreed to reduce Tracer's charges from vehicular assault to DUI in exchange for Tracer's plea of guilty.
¶ 4 Tracer, who is the son of a Jefferson County Sheriff's office employee, and his defense counsel appeared in Jefferson County Superior Court to enter a guilty plea to a reduced charge of DUI under BAC level .15 on May 9, 2008, but the special prosecutor, Andrea Vingo, did not appear that day. Instead, Ted DeBray, a duly authorized deputy for the elected prosecuting attorney Dalzell, appeared and requested that the matter be set over for one week to allow Vingo to continue to represent the State in the matter. Tracer objected to the continuance, arguing that he had a job offer that was contingent on his resolving the matter that day and that he was "prepared to plead guilty to a DUI with a breath test/blood test below [BAC level] .15." Clerk's Papers (CP) at 89.
¶ 5 The trial court denied the State's motion for a one-week continuance. It appointed Noah Harrison, a criminal defense attorney who happened to be in the courtroom representing defendants in three other matters, as a special deputy prosecuting attorney to represent the State at a hearing, to be held that afternoon, at which Tracer would enter a guilty plea to the reduced DUI charge. At that hearing, the trial court directed Harrison as follows:
[COURT]: Mr. Harrison[,] is the state orally moving to amend the information to charge driving while under the influence with a breathalyzer of less than [BAC level].15.

*851 HARRISON: I do, your honor, I make that motion.
CP at 96.
¶ 6 In his statement to the trial court in support of the plea, Harrison did not indicate that he had been in contact with the victim, see RCW 9.94A.421, nor did he recommend that mandatory restitution be set at a later date. He requested $314.08 in restitution to law enforcement. He expressly declined to recommend that Tracer be placed on probation and suggested that "the court might consider a deferred sentence in this matter to give Mr. Tracer the opportunity to keep this off his record and show the court that this was an anomaly."[2] CP at 93.
¶ 7 The trial court initially seemed to decline Harrison's suggestion that it impose a suspended sentence, but it then sentenced Tracer to 5 days plus a suspended sentence of 360 days if he did not pay his financial obligations within 24 months, stating, "if you get this paid off that's all the court care[s] about." CP at 98. It set a review hearing 10 months later to determine whether Tracer's driver's license would be administratively suspended; according to the trial court, "if the legal financial obligations are fairly close, if they are close to being paid I'll suspend." CP at 97 (emphasis added). The trial court then said to Tracer, "Well good luck to you. I think this ... I'm glad it worked out this way. I'm glad this wasn't your fault but it certainly could have been." CP at 98.
¶ 8 A week later, the State filed an emergency motion to reconsider the trial court's removal of Vingo, appointment of Harrison, and all subsequent actions in the case, including its acceptance of Tracer's guilty plea. Specifically, the State argued that the trial court had exceeded its statutory authority to appoint special prosecutors under former RCW 36.27.030 (1963) and it had, therefore, violated the separation of powers doctrine. The State further argued that Harrison was not qualified to serve as a prosecutor because his representation of other criminal defendants in the jurisdiction created a conflict of interest with the State.
¶ 9 Finally, the State submitted a declaration from Vingo stating that, while she had "had no problem with" amending the charges to DUI the night before the plea hearing, she "was noncommittal as to all the details of the proposed resolution." CP at 134. According to Vingo, she was ill when she awoke the next morning so did not attend the May 9 hearing; nonetheless, she would not have been able to reduce the charges that day because she had not been able to communicate with the victim, as RCW 9.94A.421 required. Tracer's attorney filed his own declaration disputing Vingo's account. He indicated that he did not request an amendment to the charges; rather, after months of negotiations, Vingo voluntarily offered to amend the charge to DUI. He further declared that on May 8, Vingo agreed to standard DUI first time offense penalties and indicated that she would complete the paperwork before the hearing scheduled for the following day. Additionally, Tracer's attorney stated that Vingo did not inform him of any "formalities" that prevented her from amending the DUI charge.
¶ 10 The trial court set the hearing on the State's emergency motion after the 30-day appeal deadline for the judgment and sentence. To avoid missing the appeal deadline, the State filed its notice of appeal before the hearing on the emergency motion.
¶ 11 In the meantime, Harrison filed a motion for compensation under former RCW 36.27.030. His request for $1,000 (five hours at $200 per hour) included time spent several days after the plea hearing calling the Washington State Bar Association (WSBA) ethics hotline. The State objected to Harrison's fee request, arguing that Harrison's performance as a prosecutor had been deficient and that, because any compensation would come out of Dalzell's salary, former RCW 36.27.030 provided she had a due process right to actual notice and an opportunity to be heard regarding the amount of the fee. The State offered a "certification" by a senior deputy *852 prosecutor in King County that described prosecutorial standards of practice and concluded that Harrison had failed to meet them. The State also offered Dalzell's declaration stating that her hourly salary with benefits was only $56.61 and argued that Harrison's compensation should at least be limited to that amount.
¶ 12 The trial court denied the State's emergency motion, ruling that its appointment of Harrison fell within the scope of former RCW 36.27.030 because Vingo was "any prosecuting attorney" and she had failed to attend a court session. Report of Proceedings (RP) (June 13, 2008) at 19. It explicitly declined to conclude that the entire Jefferson County Prosecuting Attorney's Office was unable to perform its duties because of a conflict of interest. The State appealed from this ruling.
¶ 13 The trial court subsequently granted Harrison's fee request as well, albeit at a lower hourly rate. It used the hourly rate given by "conflict counsel," or $65, for a total of $325. RP (June 27, 2008) at 7. The trial court also ruled that the county would pay rather than taking the funds out of Dalzell's salary. The State filed a notice of appeal from this ruling, which we consolidated with the other two appeals from the judgment and denial of the motion to vacate judgment.

ANALYSIS

Appealability
¶ 14 As a preliminary matter, Tracer argues that the trial court's denial of the State's motion to vacate the judgment is not appealable under RAP 2.2(b). There are two requirements for a superior court decision to be appealable by the State in a criminal case: (1) the decision must fall within a category enumerated in RAP 2.2(b)(1) through (6), and (2) the appeal must not place the defendant in double jeopardy. RAP 2.2(b).
¶ 15 Under the plain language of RAP 2.2(b)(1), the State may appeal from
[a] decision that in effect abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing an indictment or information, or a decision granting a motion to dismiss under CrR 8.3(c).
¶ 16 Here, the State's appeal from the judgment arising from Tracer's guilty plea falls within the scope of RAP 2.2(b)(1). The trial court's actions discontinued prosecution of the vehicular assault charge and determined the resolution of that charge by a means other than a judgment or verdict of not guilty.
¶ 17 Moreover, the non-exclusive language in RAP 2.2(b)(1) allows the State to appeal in extraordinary circumstances. See, e.g., State v. Whitney, 69 Wash.2d 256, 260-61, 418 P.2d 143 (1966) (interlocutory review granted to correct patently erroneous construction of statute likely to recur, which deprived the State of a long-accepted, highly useful and reliable means of establishing responsibility for a crime). In cases where the public has an important and justified interest in the proper administration of criminal justice and there is a serious question as to whether the appealed conduct interfered with the legitimate prosecution of criminal cases, RAP 2.2(b)(1) does not preclude the State's appeal.[3]See also RAP 1.2(a) ("These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits.").
¶ 18 Here, the State appeals the trial court's appointment of an attorney to follow the trial court's express direction that the appointed attorney amend the information to facilitate the court's acceptance of Tracer's guilty plea to a reduced charge. Under these unique circumstances, the State has amply demonstrated cause to believe that the trial court so far departed from the accepted and usual course of judicial proceedings as to call for our review. See RAP 2.3(d)(4). See, e.g., State v. Meacham, 154 Wash.App. 467, 225 P.3d 472 (2010) (the trial court lacks authority to dismiss a special allegation over the State's objection).

*853 Separation of Powers
¶ 19 The State's arguments hinge on the premise that a trial court's conduct in this case impinged on the constitutional principle of separation of powers. We agree.
¶ 20 In State v. Ramos, 149 Wash. App. 266, 270 n. 2, 202 P.3d 383 (2009), we noted that an appellant may raise a separation of powers violation for the first time on appeal. This is not only because the separation of powers is a constitutional principle, State v. David, 134 Wash.App. 470, 478-79, 141 P.3d 646 (2006), review denied, 160 Wash.2d 1012, 161 P.3d 1026 (2007), but also because an entity that acts in violation of the separation of powers doctrine acts without authority. See Ramos, 149 Wash.App. at 271, 202 P.3d 383.
¶ 21 Under separation of powers principles, the decision to determine and file appropriate charges is vested in the prosecuting attorney as a member of the executive branch. State v. Lewis, 115 Wash.2d 294, 299, 797 P.2d 1141 (1990); see also State v. Walsh, 143 Wash.2d 1, 10, 17 P.3d 591 (2001) (Alexander, C.J., concurring). Although, in the proper circumstances, trial courts have authority to dismiss charges with prejudice for prosecutorial mismanagement or misconduct under CrR 8.3(b) or without prejudice under State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986), trial courts do not have the authority to substitute their judgment for that of the prosecutor's. State v. Starrish, 86 Wash.2d 200, 205, 544 P.2d 1 (1975); see also State v. Korum, 157 Wash.2d 614, 655, 141 P.3d 13 (2006) (Johnson, J., concurring) (prosecutor's discretion to file charges is an executive function).
¶ 22 Thus, the trial court lacked authority to amend the information, sua sponte, to dismiss the vehicular assault charge and to accept Tracer's proffered guilty plea to the reduced charge of DUI under BAC level .15. By appointing and then directing the special deputy prosecutor to perform his duties in a manner predetermined by the court, Judge Verser exceeded his authority and effectively moved to amend the information sua sponte. It is axiomatic in law that one may not do indirectly what he may not do directly. Pierce County v. State, 159 Wash.2d 16, 48, 148 P.3d 1002 (2006) ("`All the powers of the states, as sovereign states, must always be subject to the limitations expressed in the United States Constitution.... What is forbidden to them, and which they cannot do directly, they should not be permitted to do by color, pretence, or oblique indirection.'") (quoting W. River Bridge Co. v. Dix, 47 U.S. (6 How.) 507, 516, 12 L.Ed. 535 (1848)). The trial court lacked the authority to amend the information on its own motion and was not authorized to direct the special prosecutor to do so. The motion to amend the information was invalid and Tracer remains charged with vehicular assault.
¶ 23 We briefly address the remaining issues.

A. Appointment of Special Prosecutor
¶ 24 The State argues that former RCW 36.27.030 did not provide statutory authority for appointment of a special prosecutor because (1) it was not the elected prosecuting attorney who had failed to appear and (2) Harrison was not "qualified" to serve as a prosecuting attorney.
¶ 25 The statute at issue is former RCW 36.27.030, which provides in relevant part:[4]
When any prosecuting attorney fails, from sickness or other cause, to attend a session of the superior court of his county, or is unable to perform his duties at such session, the court or judge may appoint some qualified person to discharge the duties of such session, and the appointee shall receive a compensation to be fixed by *854 the court, to be deducted from the stated salary of the prosecuting attorney.
¶ 26 The State raises two issues with regard to the applicability of this statute to this case: (1) whether Vingo was "any prosecuting attorney" or whether that term refers only to the elected prosecuting attorney of the county, and (2) whether Harrison was "qualified" to serve as a prosecutor.
¶ 27 Our goal in construing a statute is to carry out the legislature's intent. State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002). If a statute is unambiguous, we apply it according to its plain language. Watson, 146 Wash.2d at 954, 51 P.3d 66. But if the statute's language is susceptible to more than one reasonable interpretation, it is ambiguous, which allows this court to look to principles of statutory construction and legislative history to discern the legislature's intent. Watson, 146 Wash.2d at 955, 51 P.3d 66.

1. "Any Prosecuting Attorney"
¶ 28 The State contends that under former RCW 36.27.030, "any prosecuting attorney" means that a trial court judge may appoint a special prosecutor only if the elected prosecuting attorney fails to be available for a hearing. We disagree.
¶ 29 The State argues that "any prosecuting attorney" only includes the elected prosecutor because other provisions of chapter 36.27 RCW distinguish between the phrases "prosecuting attorney," "deputy prosecuting attorney," and "special prosecuting attorney."
¶ 30 Generally, when different words are used within the same statute, courts recognize that the legislature intended separate meanings. See State v. Beaver, 148 Wash.2d 338, 343, 60 P.3d 586 (2002). Yet, in at least one other context, the Washington Supreme Court has held that a deputy prosecutor can be included in the phrase "the prosecuting attorney." See State v. Blake, 71 Wash.2d 356, 359, 428 P.2d 555 (1967) (interpreting provisions of Rules for Courts of Limited Jurisdictions (CrRLJ) (former CrRLJ 2.01 and former CrRLJ 2.02 referring to "the prosecuting attorney.") (citing RCW 36.27.040, which states, "[t]he prosecuting attorney may appoint one or more deputies who shall have the same power in all respects as their principal")). And the qualifying term "any" suggests that the provision applies to more than one possible prosecuting attorney.
¶ 31 Furthermore, to the extent that the language may be ambiguous, it is extremely unlikely that the legislature contemplated that only the elected prosecuting attorney would be responsible for "attend[ing] session[s] of the superior court." Former RCW 36.27.030. Although we share the State's concern that the truancy of any deputy prosecutor would justify a trial court bypassing sanctions and more conventional courtroom control procedures altogether to appoint a special prosecutor to conduct the proceeding, we conclude that the statute's reference to "any" prosecuting attorney is not limited to the elected prosecuting attorney.

2. Harrison's Qualifications
¶ 32 The State argues that Harrison was not "qualified" to serve as a special prosecutor because, as an attorney for criminal defendants in concurrent litigation against the State in Jefferson County, he had a conflict of interest. We agree.
¶ 33 An attorney who represents criminal defendants may not contemporaneously represent the government in criminal cases. WSBA Informal Opinions 1766 (1997); A.B.A. Prosecution Function Standard 3.13(b); A.B.A. Defense Function Standard 4-3.5(g); A.B.A. Committee on Prof. Ethics & Grievances, Formal Op. 142 (1935); Utah St. Bar Ethics Advisory Opinion Committee: Opinion No.1998-04 (1998); Wis. St. Bar Standing Committee on Prof. Ethics, Formal Opinion E-81-5, 54 Wis. Bar Bull. No. 8, at 68 (Aug. 1981); J. Burkoff, Criminal Defense Ethics 2d: Law & Liability § 6:11, at 304-07 (2005 ed.) (surveying cases); J. Hall, Professional Responsibility in Criminal Defense Practice § 13.8 at 536 (3rd ed. 2005).
¶ 34 The trial court here did not investigate Harrison's qualifications before conscripting him to act as a special prosecutor at the trial court's direction. We appreciate the difficult position in which the trial court's *855 purported special prosecutor appointment placed Harrison. When Judge Verser first jokingly suggested the appointment, Harrison immediately stated, "It's a conflict." CP at 90.
¶ 35 Numerous courts have recognized that "[t]he interference of the Courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief." Decatur v. Paulding, 39 U.S. (14 Pet.) 497, 516, 10 L.Ed. 559 (1840); see also Perkins v. Lukens Steel Co., 310 U.S. 113, 131-32, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); United States v. Bliss, 430 F.3d 640, 650 (2d Cir.2005); Skwira v. United States, 344 F.3d 64, 72 (1st Cir.2003), cert. denied, 542 U.S. 903, 124 S.Ct. 2836, 159 L.Ed.2d 267 (2004); Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, LLC, 176 P.3d 737, 745 (Colo.2007); Kolp v. Bd. of Trustees of Butte County Joint Sch. Dist. No. 111, 102 Idaho 320, 330, 629 P.2d 1153 (1981). The functions vested solely in the executive branch prosecuting attorney include whether to initially file charges, what charges to file, and when to file them. State v. Finch, 137 Wash.2d 792, 809, 975 P.2d 967, cert. denied, 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999); see United States v. Nixon, 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case") (citing The Confiscation Cases, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1869)). Another function delegated entirely to the executive branch is deciding whether to plea bargain with a criminal defendant. Weatherford v. Bursey, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); State v. Crawford, 159 Wash.2d 86, 102, 147 P.3d 1288 (2006); State v. Moen, 150 Wash.2d 221, 227, 76 P.3d 721 (2003). See also People v. Municipal Court, 27 Cal. App.3d 193, 207, 103 Cal.Rptr. 645 (1972) (when the "so-called `special prosecutor' became the deputy of the judge in attempting to press forward with [a] prosecution," this was "in clear violation of the doctrine of the separation of powers"). Because the trial court not only appointed an attorney who was not qualified to serve as a special prosecuting attorney, but also controlled and directed the special prosecutor's representation during the case, the appointment was ineffective and the motion to amend the information invalid.
¶ 36 Because he was not serving as a properly appointed special prosecuting attorney, Harrison's motion to dismiss the vehicular assault charge was invalid. Judge Verser did not appoint Harrison to use his best professional judgment and represent the State as a special deputy prosecuting attorney; he appointed Harrison and directed him to assist the court in amending the information and accepting Tracer's proffered guilty plea to a reduced charge. As such, the trial court lacked authority to amend the information to remove the vehicular assault charge and had no authority to accept Tracer's guilty plea to a different charge. See State v. Bowerman, 115 Wash.2d 794, 799, 802 P.2d 116 (1990) (the defendant's right to plead guilty is limited to the crime as charged); see also CrR 4.2(a) (At arraignment, a defendant may plead not guilty, not guilty by reason of insanity, or guilty.).

B. De Jure/De Facto Public Official Doctrine
¶ 37 Tracer argues that, even if the trial court's appointment of Harrison was improper, the State may not collaterally attack the acts of a de facto prosecutor.
¶ 38 The de facto public official doctrine bars collateral attacks on the authority of a de facto public official to act. State v. Cook, 84 Wash.2d 342, 350, 525 P.2d 761 (1974). To constitute a person as an officer de facto, he must be in actual possession of the office, exercising its functions and discharging its duties under color of title. State v. Smith, 52 Wash.App. 27, 29, 756 P.2d 1335 (1988). Tracer argues that because the trial court appointed Harrison, he acted with "at least colorable title to office." Br. of Resp't at 18. But the prosecuting attorney's undisputed role is to select his prosecutor for any given case unless there is a valid appointment under former RCW 36.27.030. See former RCW 36.27.040 (2000).
¶ 39 We agree with the State that Harrison's motion to amend the information was *856 void because former RCW 36.27.030 did not authorize the appointment or allow his conduct in the case to be directed by the trial court. See RCW 2.44.020 (if attorney appears for party without authority, court may relieve the party from the consequences of attorney's act); see also People v. Stackpoole, 144 Mich.App. 291, 375 N.W.2d 419 (1985) (unauthorized prosecutor's dismissal of case was not binding on real prosecutor's office); Smith v. State, 42 Okla.Crim. 308, 275 P. 1071 (1929); Brunty v. Smith, 22 Va.App. 191, 196, 468 S.E.2d 161 (1996).

C. Compensation
¶ 40 The State maintains that the trial court improperly awarded Harrison's special prosecuting attorney fees. Harrison did not file a response brief on this subject and he has relinquished his right to be heard.
¶ 41 Under former RCW 36.27.030, a special prosecuting attorney is entitled to "compensation to be fixed by the court, to be deducted from the stated salary of the prosecuting attorney." Generally, if appointment of a special prosecutor was improper, the unauthorized attorney is not entitled to fees under former RCW 36.27.030. See Osborn v. Grant County, 130 Wash.2d 615, 628, 926 P.2d 911 (1996). Accordingly, we vacate the trial court's award of fees to Harrison.

Authority to remand

A. Double Jeopardy
¶ 42 Tracer contends that once the trial court accepted his guilty plea, the double jeopardy clause barred the State's requested relief. Double jeopardy is implicated in appeals where the government seeks to subject the defendant to a second trial for the same offense. See United States v. Scott, 437 U.S. 82, 87, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). Tracer argues that remanding for trial on the original vehicular assault charge would violate his right against double jeopardy for the same offense because jeopardy attached when the trial court accepted his guilty plea. We disagree.
¶ 43 The prosecutor and the defendant are the only parties to a plea agreement. State v. Pouncey, 29 Wash.App. 629, 634-35, 630 P.2d 932, review denied, 96 Wash.2d 1009 (1981). "The judge's role is not that of a party to the negotiation but rather as an examiner to assure that the plea procedure is characterized by fairness and candor." State v. Tourtellotte, 88 Wash.2d 579, 583, 564 P.2d 799 (1977). Although the superior court has some latitude in conducting the proceedings before it, that latitude does not extend to engaging in plea negotiations, appointing special prosecutors and directing them in the manner in which to conduct their duties so as to affect the outcome of those negotiations, or using that special prosecutor to alter the charging documents duly filed before it to effectuate the agreement.
¶ 44 Accordingly here, the trial court accepted Tracer's guilty plea to an invalid amended information. Because Harrison's motion to amend the information was done without lawful authority, it is void and because Tracer cannot bargain with the court to accept a guilty plea to a portion of the charges filed in the information, Tracer remains charged with vehicular assault. Bowerman, 115 Wash.2d at 800-01, 802 P.2d 116.

B. Due Process
¶ 45 Tracer argues that he has a due process right to the benefit of his plea agreement. A defendant does not have a constitutional right to plea bargain, see Weatherford, 429 U.S. at 561, 97 S.Ct. 837, and, thus, the failure to enforce an alleged plea proposal cannot violate substantive due process. State v. Yates, 161 Wash.2d 714, 741, 168 P.3d 359 (2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2964, 171 L.Ed.2d 893 (2008). Absent some detrimental reliance by the defendant, the State may withdraw from any plea agreement before the actual entry of a guilty plea, which constitutes acceptance by both parties. Yates, 161 Wash.2d at 741, 168 P.3d 359. The trial court lacked authority to amend the information or to accept Tracer's guilty plea to a lesser charge and the judgment and sentence based thereon is void. Tracer has not demonstrated any detrimental reliance either before or after the hearing at issue in this case that would bind *857 this court to perpetuate the error that the trial court committed below.

C. Remand
¶ 46 Assuming a plea agreement between Vingo and Tracer existed, the State, through a duly appointed special prosecuting attorney, is technically free to withdraw it. We note, however, that the record contains no suggestion that Tracer contributed to the circumstances that form the basis of this appeal. It is tempting to resolve the matter on equitable grounds and allow Tracer's plea to stand. But such a decision would contribute to the further misuse of judicial authority in violation of the separation of powers doctrine and ignore the law. We leave the decision of the proper disposition of this case to the sound independent exercise of the judgment and duties of a properly appointed qualified special deputy prosecuting attorney and remand for further proceedings consistent with this opinion before a different trial judge.
I concur: HOUGHTON, J.
PENOYAR, A.C.J. (concurrence).
¶ 47 I concur in the majority's result. I agree that the trial court improperly directed Special Deputy Prosecutor Noah Harrison's exercise of discretion.
NOTES
[1] Because Tracer is the son of a Jefferson County Sheriff's office employee, the Jefferson County Prosecutor, Juelanne Dalzell appointed a special prosecutor.
[2] We note that as a serious traffic offense, the trial court was required to report Tracer's conviction to the Department of Licensing within 10 days of entry of the judgment and sentence. See former RCW 46.20.270 (2006).
[3] We note that RAP 2.2(b)(1) does not preclude appeals from guilty judgmentsalthough the cases in which the State would want to appeal from a guilty judgment will be very rare.
[4] The preceding paragraph to this section provides:

When from illness or other cause the prosecuting attorney is temporarily unable to perform his duties, the court or judge may appoint some qualified person to discharge the duties of such officer in court until the disability is removed.
Former RCW 36.27.030. Parts of the parties' briefing suggest that the trial court appointed Harrison under this paragraph because the elected prosecuting attorney had a conflict of interest arising from Tracer's relationship with the Jefferson County Sheriff's Office. But the trial court explicitly stated that that was not the reason for its appointment.