# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47312-7-II |
| Respondent, | |
| v. | |
| I.R.G., | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — I.G. seeks accelerated review of his second degree assault conviction and the manifest injustice disposition he received.[1]  A juvenile court found I.G. guilty of second degree assault by strangulation after a fact-finding hearing.  I.G. appeals.  We hold that the State presented sufficient evidence to support I.G.'s conviction for second degree assault and that the manifest injustice disposition was proper.  We affirm.

FACTS

I.  BACKGROUND FACTS

In November 2014, Aberdeen Police Officer Monte Glaser responded to a reported assault at a local residence.  He contacted H.G. and her mother.  H.G. explained that she had been assaulted by I.G., who had left the residence.  H.G. told Officer Glaser that she and I.G. had been in an

---

[1] We refer to the minor parties by their initials for anonymity.

argument and that I.G. grabbed her throat and neck with both hands when she refused to let I.G. into her bedroom. Officer Glaser recalled H.G. stating that she could not speak or breathe and he observed redness extending all the way around H.G.'s throat and neck.

Officer Glaser then contacted I.G. at his father's home. I.G. had scratch marks on his face, which, according to Officer Glaser's training and experience, appeared to be defensive wounds consistent with assault by strangulation.

## II. PROCEDURE

The State charged I.G. with second degree assault by strangulation contrary to RCW 9A.36.021(1)(g). At trial, Officer Glaser testified consistently with the facts mentioned above regarding his response and investigation. H.G. testified that what began as a "little cat fight" escalated when I.G. grabbed H.G.'s neck with both hands, choking her. Report of Proceedings (RP) at 19. H.G. described her inability to breathe when I.G. squeezed her neck "really hard," stating that she was gasping for air. RP at 20. She also recalled her attempts to hit I.G. to get him off of her.

After hearing all the evidence, the trial court entered these relevant findings of fact and conclusions of law:

6. [I.G.] grabbed [H.G.]'s throat with both of his hands and applied full pressure to her throat and neck.
7. [H.G.] was unable to breathe or speak and gasped for air.
8. [H.G.] [i]nstinctively scratched [I.G.]'s face in an effort to get him to release his grip on her throat.

. . . .

### CONCLUSIONS OF LAW

. . . .

6. The Finder of Fact was convinced beyond a reasonable doubt that [I.G.] strangled [H.G].
7. All other elements of Assault 2° were established.
8. [I.G.] is guilty as charged of Assault 2°.

2

Clerk's Papers (CP) at 13.

I.G.'s standard range disposition was 15 to 36 weeks. The juvenile court, however, was unconvinced that a disposition of that length was adequate considering the court's "significant history with [I.G.]." RP at 34-35. The court ordered I.G. to undergo a psychological evaluation with Dr. Keith Krueger.

At the disposition hearing, I.G.'s probation officer recommended a disposition of 52 weeks—based in part on Dr. Krueger's report—and the State concurred. The foundation of Dr. Krueger's report was information obtained from a lengthy interview with I.G. The report documented I.G.'s troubled past beginning with truancies, "youth at risk" proceedings, and failed drug treatment efforts. Dr. Krueger concluded that I.G. suffered from cannabis and methamphetamine use disorders and an unspecified anxiety disorder. In Dr. Krueger's view, the need for further chemical dependency treatment was "obvious." Suppl. CP at 37.

The report also included the suggestion that future treatment efforts include extensive social skills training with drug treatment and relapse prevention. Dr. Krueger concluded that if I.G. were to be placed in a secure residential drug facility with intensive treatment programs, I.G. would need at least a 6-month period of supervision, but if he were placed into a less intensive program, 9 to 12 months would be required.

The juvenile court expressed its concerns regarding I.G.'s mental health and drug treatment needs. Based on Dr. Krueger's report, the court also found that I.G. was clearly a risk to remain

safely in the community. The court found specifically that (1) I.G. inflicted serious bodily injury to another in the commission of his crime, (2) there were other complaints which have resulted in diversion or a finding or plea of guilt not included as criminal history, (3) I.G. was a threat to the community, (4) he was beyond parental control, and (5) I.G. had mental health and drug treatment needs that could not be addressed in the community. The juvenile court found that a manifest injustice would result from a standard range disposition. Therefore, the court directed I.G. to be committed to a Juvenile Rehabilitation Administration facility for 80 to 100 weeks. I.G. appeals.

ANALYSIS

I. SUFFICIENT EVIDENCE SUPPORTS A CONVICTION FOR SECOND DEGREE ASSAULT

I.G. contends that the State presented insufficient evidence to support his conviction for second degree assault. Specifically, I.G. argues that the State failed to prove that I.G. obstructed H.G.'s ability to breathe or that he intended to obstruct H.G.'s ability to breathe in part because the State presented no medical testimony regarding H.G.'s injuries. We disagree.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Following a bench trial, our review is limited to determining whether substantial evidence supports the findings of fact, and if so, whether the findings support the conclusions of law. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Homan*, 181 Wn.2d at 106. We review challenges to a trial court's conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

To prove that I.G. committed second degree assault, the State had to establish that, under circumstances not amounting to first degree assault, I.G. "[a]ssault[ed] another by strangulation or suffocation." RCW 9A.36.021(1)(g). "'Strangulation' means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe." RCW 9A.04.110(26).

Here, I.G. first argues that the State failed to demonstrate that he obstructed H.G.'s ability to breathe. He assigns error to the court's findings that he grabbed H.G.'s throat and applied pressure, rendering H.G. unable to breathe.

But H.G. testified that when I.G. placed both of his hands around her neck and squeezed her, she "could [not] breathe" and she was "gasping for air." RP at 20. H.G. later answered affirmatively when the State asked whether I.G. blocked off her air so that she could not breathe. Officer Glaser testified that he observed red marks all the way around H.G.'s neck when he responded to the reported crime. And H.G. told Officer Glaser she could not speak or breathe.

This testimony constitutes evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Homan*, 181 Wn.2d at 106. The juvenile court's findings that (1) I.G. grabbed H.G.'s throat with both hands and applied pressure to her neck and (2) H.G. was unable to breathe or speak and gasped for air are therefore supported by substantial evidence. These findings of fact also support the court's conclusion of law that the State proved each element of the charged crime. RCW 9A.36.021(1)(g). I.G.'s argument that the State failed to prove that he intended to obstruct H.G.'s ability to breathe or that he did in fact do so is therefore unavailing.

Second, I.G. argues that the State failed to present sufficient evidence because it did not provide expert medical testimony. We reject this contention because I.G. cites no authority to suggest that expert medical testimony is required to demonstrate obstruction of airflow or breath when a victim testifies that he or she could not breathe. We hold I.G.'s insufficiency arguments fail.

## II. MANIFEST INJUSTICE DISPOSITION

I.G. next argues that the juvenile court erred by finding that a standard range disposition would effectuate a manifest injustice and by imposing a disposition well beyond the standard range. Specifically, I.G. contends that the reasons given by the juvenile court do not clearly and convincingly support a manifest injustice disposition and that the disposition is clearly excessive. Again, we disagree.

A.  RULES OF LAW

A court may impose a disposition outside the standard range for a juvenile offender if it determines that a disposition within the standard range would "effectuate a manifest injustice." RCW 13.40.160(2); *State v. Beaver*, 148 Wn.2d 338, 345, 60 P.3d 586 (2002). "'Manifest injustice' means a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of the [Juvenile Justice Act of 1977, ch. 13.40 RCW]." RCW 13.40.020(19); *State v. M.L.*, 134 Wn.2d 657, 660, 952 P.2d 187 (1998). These purposes include protecting the citizenry from criminal behavior; making the juvenile accountable for his or her criminal behavior; providing for punishment commensurate with the age, crime, and criminal history of the juvenile; and providing necessary treatment, supervision, and custody of juvenile offenders. RCW 13.40.010(2)(a)-(f).

To uphold a disposition outside the standard range, an appellate court must find that (1) the reasons supplied by the disposition judge are supported by the record before the judge, (2) those reasons clearly and convincingly support the conclusion that a disposition within the standard range would constitute a manifest injustice, and (3) the sentence imposed was neither clearly excessive nor clearly too lenient. RCW 13.40.230(2); *M.L.*, 134 Wn.2d at 660. A disposition is clearly excessive "'only when it cannot be justified by any reasonable view which may be taken of the record.'" *State v. T.E.C.*, 122 Wn. App. 9, 17, 92 P.3d 263 (2004) (internal quotation marks omitted) (quoting *State v. Tauala*, 54 Wn. App. 81, 87, 771 P.2d 1188 (1989)). And in determining the appropriate disposition, a trial court may consider both statutory and nonstatutory aggravating factors. *State v. J.V.*, 132 Wn. App. 533, 540-41, 132 P.3d 1116 (2006).

## B. THE REASONS GIVEN CLEARLY AND CONVINCINGLY
## SUPPORT THE MANIFEST INJUSTICE DISPOSITION

Here, the juvenile court supplied these reasons in support of its determination that a sentence within the standard range would effectuate a manifest injustice: (1) that I.G. inflicted serious bodily injury in the commission of his crime, (2) there were other complaints which have resulted in a diversion or guilty pleas not included as criminal history, (3) that I.G. was a threat to the community, (4) that I.G. was beyond parental control, and (5) that I.G. had mental health and drug treatment needs that could not be addressed in the community. I.G. appears to contest whether the reasons given clearly and convincingly support the manifest justice determination.[2]

The juvenile court based its findings primarily on its previous experience with I.G. and on Dr. Krueger's evaluation report. In its oral ruling, the court noted that I.G. has defied court orders on "dozens" of occasions, the seriousness of his behavior and his drug use have escalated steadily, I.G. has not benefitted meaningfully from previous in-patient treatment and counseling programs, the safety of those who live in his home would be an ongoing concern were he to be released in a short while, his parents either lack control or opt not to exercise control, and I.G.'s intensive treatment needs cannot be addressed in the community in a local setting because I.G. would not participate if released.

Dr. Krueger concluded that I.G.'s need for further chemical dependency treatment was obvious because of his marijuana and methamphetamine abuse. He also noted that I.G.'s track record in open, nonrestrictive programs was poor as he "ran" from one such program at least five

---

[2] I.G. does not appear to challenge whether substantial evidence in the record supports the reasons articulated by the juvenile court. I.G. also appears to suggest that the court should not have considered I.G.'s record as a truant, but the court did not rely on I.G.'s history of truancy as part of its manifest injustice finding.

times. Suppl. CP at 37. Even following a confined treatment program, I.G. relapsed and continued using drugs shortly thereafter. Dr. Krueger recommended extensive social skills training with drug treatment and relapse prevention. Dr. Krueger opined that I.G. could need 6 to 12 months of treatment.

The juvenile court specifically incorporated Dr. Krueger's report into the record before it. And we review the entire record on appeal, including the oral opinion of the disposition judge. *State v. E.J.H.*, 65 Wn. App. 771, 775, 830 P.2d 375 (1992). It is evident that the court's findings were supported by the record before it and that clear and convincing evidence supports the court's manifest injustice determination. *See T.E.C.*, 122 Wn. App. at 20-21 (finding that a sexual evaluation provider's recommendations provided the court with clear and convincing evidence to support the aggravating factor on which a court based its manifest injustice disposition). It was apparent to the juvenile court, based on its experience with I.G. and the recommendations of a clinical psychologist, that 15 to 36 weeks was not enough time for I.G. to receive meaningful treatment or to achieve appreciable progress.

## C. THE DISPOSITION WAS NOT CLEARLY TOO EXCESSIVE

I.G.'s contention that the 15- to 36-week standard range disposition was not clearly too lenient and that the manifest injustice disposition was clearly too excessive is also unpersuasive. First, I.G. contends that nothing in the record indicates that a length of confinement beyond the standard range is necessary. But Dr. Krueger's opinion that I.G. could need 6 to 12 months of treatment provides a reasonable basis on which to conclude that a standard range disposition was inadequate.

Next, I.G. contends the length of the disposition was clearly excessive. We disagree. Once a juvenile court has concluded that a disposition within the standard range would effectuate a manifest injustice, the court is vested with broad discretion in determining the appropriate sentence to impose. *M.L.*, 134 Wn.2d at 660. We will reverse a juvenile court's ruling regarding the length of a manifest injustice disposition only when we determine that the court abused its discretion. *State v. N.B.*, 127 Wn. App. 776, 782, 112 P.3d 579 (2005). While the duration of the manifest injustice disposition here extends beyond the length of treatment recommended, our courts have recognized that when a specific duration of treatment is not the sole basis for a manifest injustice disposition, such a disposition may exceed the length of treatment. *N.B.*, 127 Wn. App. at 782.

There were several factors that compelled the court to conclude that a disposition within the standard range would effectuate a manifest injustice. I.G. cannot demonstrate that no reasonable view of the record justifies the court's departure from the standard range and, therefore, the disposition is not clearly excessive.

Finally, as part of his argument that his disposition was clearly excessive, I.G. appears to argue that the court improperly relied on his having caused serious injuries to H.G. as an aggravating factor because the legislature has already envisioned that fact as part of the charged crime. Although this particular factor is specifically delineated by statute among several others as factors that the legislature has expressly authorized courts to consider, RCW 13.40.150(3)(i), I.G. is correct that courts may not rely on factors necessarily contemplated by the legislature in defining the standard range or which inhere in the charged crime. *State v. E.A.J.*, 116 Wn. App. 777, 789, 67 P.3d 518 (2003) (noting that serious bodily injury from choking formed the basis for second degree assault when a victim was choked until she was rendered unconscious). We assume that

serious bodily injury inheres in any charge for second degree assault by strangulation and, therefore, the juvenile court erred by considering that factor in making its manifest injustice finding.

But we reject I.G.'s argument because when an exceptional sentence is based on both proper and improper grounds, we do not have to remand for resentencing if we are satisfied that the trial court would have imposed the same sentence absent consideration of the improper grounds. *State v. Bedker*, 74 Wn. App. 87, 100-01, 871 P.2d 673 (1994). Here, a review of the record reveals that I.G.'s need for treatment, his lack of parental control, and the danger he posed to others in his household were the principal factors on which the juvenile court relied.

Of the five factors in the court's written findings, the court mentioned each in its oral ruling *except* for the serious bodily harm factor. The juvenile court stated that it was relying in large part on Dr. Krueger's report, which is almost completely dedicated to I.G.'s drug abuse, his home life and family history, and his need for continued treatment. We decline to remand for resentencing because the juvenile court clearly would have imposed the same sentence absent the improper factor.

Therefore, we hold that the reasons supplied by the juvenile court are supported by the record, those reasons clearly and convincingly support the court's conclusion that a disposition within the standard range would effectuate a manifest injustice, and the disposition imposed was not clearly excessive.

11

No. 47312-7-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN

MAXA, J.