[No. 4541–II. Division Two. June 23, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMIE
LEE POUNCEY, *Appellant.*

*Lawrence W. Moore,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRIE, A.C.J.—Jimmie Lee Pouncey appeals a judgment and sentence committing him to confinement for 10 years upon his plea of guilty to a third amended information which charged him with the crime of conspiracy to commit

robbery in the first degree. His only contention on appeal is that the trial court erred by denying his presentence motion to withdraw his plea of guilty because it was both coerced and equivocal. We affirm.

The posture of this appeal is somewhat awkward because of the absence of a verbatim record to establish precisely what occurred in chambers shortly before Mr. Pouncey in open court entered, and the court accepted, his plea of guilty. Nevertheless, viewing the available record and his assertions in a light most favorable to him, we hold the trial court did not err by denying defendant's motion to withdraw his plea of guilty. As thus viewed, we discern the following series of events.

On October 10, 1979 trial was about to commence on a second amended complaint, which had charged defendant with two counts of first degree robbery while armed with a deadly weapon. Until that time there had been no plea bargaining discussions between counsel. The trial judge invited counsel (but not defendant) to chambers and requested each to present to him a brief summary of their respective versions of the facts of the case. No record was made of what occurred in chambers, but defense counsel subsequently, at the hearing on the motion to withdraw, expressed his version of the events as follows:

MR. MOORE: . . . And then Mr. Johnson [deputy prosecutor] and I proceeded to give you a summary of the facts of the case as we saw it. And you indicated your feelings that Mr. Pouncey—that there was a great likelihood that Mr. Pouncey would be convicted, and if convicted, you would be required by law to sentence him to the prison, and the sentence would be severe if he was convicted of two counts of an armed robbery. And then you made a suggestion that maybe the case could be worked out other than armed robbery. At that point, Mr. Johnson—I think you asked Mr. Johnson a question—I don't recall what that question was that you asked him. But I recall the reply of Mr. Johnson. And that was that he knew of a conspiracy to a robbery charge that was available—that he could plead guilty to as a lesser offense than the armed robberies. Because the position

that I explained to you, Mr. Johnson, was that he absolutely refused to plead to the armed robberies. So as an alternative, Mr. Johnson suggested a conspiracy to an armed robbery.

Defense counsel then left chambers and discussed the situation with his client. Defendant expressed concern lest he be sentenced to prison if he pleaded guilty to the conspiracy charge. Counsel then returned to chambers, and his version of what then occurred and the court's comments thereon follows:

MR. MOORE: . . . And then we had another discussion in your chambers, and Mr. Johnson said that he would recommend six months in the county jail with work release if he was working. And you indicated—You wanted to know about his record. And—Initially, all I had thought what his record was, was several misdemeanors. And then you indicated that you may go along with the recommendation of the prosecution of six months in the county jail.

THE COURT: If he had no prior record.

MR. MOORE: If he had no prior record. Then I went out and talked—this is all before the plea. Then if the Court recalls, I went out and talked to Mr. Pouncey and I found out at that time that he [had been convicted of] a felonious assault upon his wife, and I came back into the chambers and told Mr. Johnson, and yourself, that he had served nine or ten months, or a greater part of a year, in a jail in Mississippi as a result of a felonious—

DEFENDANT: Louisiana.

MR. MOORE: —as a result of a felonious assault upon his wife. And there was some discussion about that, and you did make it clear that you would not bind yourself, but you asked about when this assault occurred, and this occurred before he moved to the Tacoma area, which was some ten—over ten—years ago.

With that I went back out and talked to Mr. Pouncey again. And then with, I would say, the extreme amount of reluctance, out of fear that he was going to be convicted of two counts of armed robbery, and because of my advice that I told him that I thought that there was sufficient amount of evidence to convict him, he then attempted to enter this plea.

The court's version of what transpired in chambers and defense counsel's comments thereon follows:

THE COURT: I did not open up any discussions. I merely said, gentlemen, have you discussed any kind of a plea bargaining arrangement here. I did not encourage this defendant to enter a plea.

MR. MOORE: Well, that's a—I think you did encourage him. You certainly encouraged me to encourage him to encourage a plea, because—

THE COURT: Well, I suggested to you that you might consider it, if you had not already talked about it with your client, because two counts of armed robbery are a rather serious matter.

MR. MOORE: That's correct.

THE COURT: And I think it is your responsibility as an attorney to consider the alternatives to proceeding with a trial in which there appeared to be, based on what Mr. Johnson outlined in your presence and my presence, a real possibility of a conviction of your client on two counts of armed robbery. And I think you were aware of that fact. You knew what this woman would testify to, did you not?

MR. MOORE: Yes, we had taken her deposition.

THE COURT: All right. You knew more about it than the Court did, by far. I did not see any such deposition. And I urged you to give some thought to it. I did not tell you what to do. I did not suggest what to do. We were ready to proceed to trial. You went out and talked to your client. He knew what he was faced with. He knew the testimony that would be presented against him, far better than this Court did. I was aware only of a mere summary statement by Mr. Johnson of what the case was all about. I had not even seen the file until that time.

Now, Mr. Moore, I am sympathetic with your client's problem, but I do not have a crystal ball. I do not know, ultimately, the truth. I do know, however, what happened that morning. And I did not encourage this defendant to enter a plea of guilty to this lesser charge, nor did I encourage you to do it. I merely suggested you ought to think about it, and talk to your client about it. Because two counts of armed robbery are a very serious matter. I think the record before the Court, and our discussion in open court, clearly sets forth the attitude of this Court in connection with this plea. And very frankly,

Mr. Moore, had I not gone to such pains to—as shown by this transcript—to make certain that this defendant had thoroughly thought about this matter and considered all aspects of it, before he entered this plea, I would probably grant your motion. But I am not inclined to grant it, in view of this transcript.

MR. MOORE: Just give me one more minute, Your Honor.

THE COURT: All right.

MR. MOORE: I don't think encourage is the correct word. I don't think you encouraged me to advise him to enter into a plea. Encourage is not the word. It was more like subtle pressure upon me.

THE COURT: I resent that suggestion. And I deny that, Mr. Moore. I did not assert any pressure against you.

The prosecution's version of what transpired in chambers and the court's comment thereon follows:

MR. JOHNSON: I will relate my recollection, Your Honor. As I recall, we had reached a point of having the jury summoned here. Your Honor suggested that perhaps counsel and I had not explored all the alternatives, and I know that up to that point, Mr. Moore had indicated his client's position was such that he wasn't going to enter a plea of guilty to anything.

The Court encouraged us to look at our respective positions. The State, regarding the strength of the evidence that would be presented to the jury; the defendant, regarding the possible exposure that he faced in terms of the charges of first degree robbery and the fact that he well could be found to be armed with a deadly weapon, which would incur a mandatory minimum term. Negotiations are, usually, not simple, and they're often not easy. And it was not easy in this case, for either the State, or Mr. Moore and his client to reach an understanding. It was done; and then the Court has the transcript of what took place during the plea.

I would like to make a couple of remarks regarding counsel's legal arguments in this situation.

THE COURT: Well, I want you also to make a statement whether, in your opinion, this Court exerted any pressure or any coercive effort upon Mr. Moore to induce his client to enter a plea.

MR. JOHNSON: I don't believe there was any pressure

present, Your Honor. Whenever the Court makes a suggestion, counsel listens, of course, but Mr. Moore is not a babe in the woods, neither am I, and neither one of us accept undue pressure from any Court or any other attorney. And I don't think that was present, in this case.

We turn first to the rules which govern the taking and withdrawal of pleas of guilty. CrR 4.2(d) provides:

The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

And CrR 4.2(f) provides:

The court shall allow a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.

Particularly pertinent (although not yet specifically made applicable in this jurisdiction) are 3 American Bar Ass'n, *Standards for Criminal Justice,* Std. 14–3.3(c)–(f) (2d ed. 1980) which were approved by ABA House of Delegates on February 12, 1979. Those standards provide:

(c) When the parties are unable to reach a plea agreement, if the defendant's counsel and prosecutor agree, they may request to meet with the judge in order to discuss a plea agreement. If the judge agrees to meet with the parties, the judge shall serve as a moderator in listening to their respective presentations concerning appropriate charge or sentence concessions. Following the presentation of the parties, the judge may indicate what charge or sentence concessions would be acceptable or whether the judge wishes to have a preplea report before rendering a decision. The parties may thereupon decide among themselves, outside of the presence of the court, whether to accept or reject the plea agreement tendered by the court.

(d) Whenever the judge is presented with a plea agreement or consents to a conference in order to listen to the parties concerning charge or sentence concessions, the court may require or allow any person, including the defendant, the alleged victim, and others, to appear or to

testify.

(e) Where the parties have neither advised the judge of a plea agreement nor requested to meet for plea discussion purposes, the judge may inquire of the parties whether disposition without trial has been explored and may allow an adjournment to enable plea discussions to occur.

(f) All discussions at which the judge is present relating to plea agreements should be recorded verbatim and preserved, except that for good cause the judge may order the transcript of proceedings to be sealed. Such discussions should be held in open court unless good cause is present for the proceedings to be held in chambers. Except as otherwise provided in this standard, the judge should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered.

In this jurisdiction ABA Standards have at times been recognized as appropriate guides when otherwise available rules do not fully cover a given situation. *E.g., State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976); *State v. Rohatsch,* 23 Wn. App. 734, 599 P.2d 13 (1979). In the case at bench, it appears that neither CrR 4.2(d) nor (f) totally encompasses the issue on appeal. Accordingly, we accept the principles of ABA Standards 14–3.3(c)–(f) until a more explicit rule is promulgated locally. Those standards limit the trial judge's involvement in the process to an inquiry whether the adversaries have explored disposition of the cause without trial with the admonition that the judge should never, directly or indirectly, communicate to defendant or his counsel that a guilty plea should be entered or that an agreement (or proposal) should be accepted.

These standards, as ultimately adopted as the official position of the American Bar Association vary significantly from prior editions previously published. Under the latter the trial court was admonished either not to "participate" or, later, not to be "involved" with the plea discussions. Under the prior standards judge participation was some-

times "totally barred," *State v. Buckalew,* 561 P.2d 289 (Alaska 1977), or characterized as unduly coercive. *State v. Cross,* 270 S.C. 44, 240 S.E.2d 514 (1977).

The differences between the finally adopted standards and those previously "approved" are highlighted by the commentaries to Standard 14–3.3(c)–(f) as follows:

> Concern frequently has been expressed that any judicial involvement in plea discussions with the parties is coercive and should not be allowed. The first edition of these standards expressed this view, and a number of court decisions as well have condemned judicial participation. In addition, the Federal Rules of Criminal Procedure and numerous statutes and rules forbid the involvement of judges in plea discussions. There nevertheless is substantial evidence that the practice is widespread, particularly in the state courts. What is most important, however, is that the type of judicial presence in plea negotiations contemplated by these standards differs markedly from the kind that has so often been criticized. These standards do not suggest that the court should play the role of active bargainer. Instead, paragraph (c) states that the judge "shall serve as a moderator," and paragraph (f) admonishes that the judge "should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered." Surely a judge who is faithful to this principle exerts considerably less pressure on the defendant to plead guilty than does the prosecutor, who is free to exert overt pressure in virtually every criminal case. The defendant, it should be remembered, is not required to be present at a plea conference with the judge pursuant to paragraph (c), nor does a conference have to be held at all unless the defendant and defense counsel desire the meeting. Finally, in order to permit review of allegations of overreaching by the judge, paragraph (f) states that "[a]ll discussions at which the judge is present relating to plea agreements should be recorded verbatim and preserved. . . ."

(Footnotes omitted.) 3 American Bar Ass'n, *Standards for Criminal Justice,* Std. 14–3.3(c)–(f), Commentary at 14.84–85 (2d ed. 1980).

█ Regardless of the precise wording of the standard (and, indeed, independent of any specific standard), we believe the appropriate appellate function is to scrutinize the available record carefully to determine whether or not the judge's presence and/or involvement affected the voluntariness of the defendant's plea. *See State v. Byrd,* 63 Ohio St. 2d 288, 407 N.E.2d 1384 (1980).

Viewed in that light we hold the trial judge's efforts in the case at bench were not a coercive factor in the defendant's plea of guilty to the charge of conspiracy to commit robbery in the first degree. It is unfortunate that a verbatim record of the preliminary discussions was not made. Nevertheless, although defendant's counsel may have experienced "subtle pressure", the subsequently reconstructed record of those events indicates clearly to us that the court acted merely as a "moderator." Defendant's counsel's express declaration was that although defendant was extremely reluctant to do so, he (defendant) attempted to enter the guilty plea, because of a fear that if he went to trial he would be convicted of two counts of armed robbery and because of his counsel advising him "that there was sufficient amount of evidence to convict him." We find no error in the court's actions during the plea discussions.

█ We turn then to consideration of the question whether defendant should have been permitted to withdraw his plea because it was entered equivocally. Here, the appropriate standard has been enunciated in *State v. Newton,* 87 Wn.2d 363, 370–71, 552 P.2d 682 (1976) as follows:

> [T]he fact a defendant who desires to plead guilty also refuses to admit guilt does not require a rejection of the plea if the factual basis for the plea can nevertheless be established.

At the plea taking hearing, the trial court was advised as follows:

> MR. JOHNSON: A witness would testify that she was present when the gun was given, by Mr. Pouncey, to Willie Pugh, that it was understood that the gun was to be used in a robbery, or robberies, and that Mr. Pouncey

receive a share of the robbery proceeds, for the use of the gun. And that she observed him receive money on the two occasions, the Oasis Tavern, and Rollie's Tavern, although, he didn't know about that one ahead of time. And we haven't charged him on that one. And it was, thereafter, understood that he would obtain the gun. He may dispute that, but that is what our witness would testify to.

THE COURT: That is what the State is prepared to prove?

MR. MOORE: The Court might be advised that her statement has been taken under oath and is in the file. At which time we were present and I did cross–examine her. All the parties were present. So her statement has been down. Even though we dispute it, I'm satisfied that that's the evidence they would put on.

Indeed, defendant told the court that he gave the gun to Pugh for purposes other than robbery, and that although he received money from Pugh after the robbery occurred, the money was repayment of a debt.

Under the standard set forth in *Newton,* the trial court validly accepted the plea.

Judgment affirmed.

PEARSON and CORBETT, JJ., concur.

Reconsideration denied July 21, 1981.

Review denied by Supreme Court October 16, 1981.