[No. 39600-9-II.  Division Two.  January 19, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. JENNIFER LEIGH RICE, *Appellant*.

---

546

552

*Rita J. Griffith*; and *James E. Lobsenz* (of *Carney Badley Spellman*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — At a bench trial on stipulated facts, the trial court found former Tacoma Public School District elementary school teacher Jennifer Rice guilty of (1) first degree kidnapping, which involved special allegations of sexual motivation under former RCW 9.94A.835 (2006) and a victim less than 15 years old under RCW 9.94A.837; (2) first degree child molestation, with a special allegation of being predatory under RCW 9.94A.836; and (3) two counts of third degree child rape. The trial court imposed two concurrent life sentences with a minimum 25 years of confinement and two concurrent 60 month sentences.

¶2 Rice challenges the constitutionality of the special allegation statutes and the resulting sentencing enhancements, asking us to remand for resentencing. Rice argues that RCW 9.94A.836 and .837 and former RCW 9.94A.835 violate the separation of powers doctrine, improperly in-

volve the trial court in plea bargaining, and impinge on her due process and Eighth Amendment rights. Rice also challenges the imposition of a sentencing enhancement that mirrors an element in her underlying crime as a violation of her right to be free from double jeopardy. In a statement of additional grounds (SAG),[1] Rice contends that the sentencing court imposed an illegal sentence and that her sentence violates all the stated purposes of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. We discern no error and affirm.

## FACTS

¶3 At trial, the parties stipulated to the following substantive facts:

Jennifer Leigh Rice was born on November 30, 1975. O.E. was born on October 30, 1996. Jennifer Rice and O.E. are not and have never been married to each other. During the entire period between December 1, 2006 and February 28, 2007, Jennifer Rice was a 4th grade teacher, as contemplated in the definition of "predatory" as set forth in [former] RCW 9.94A-.030 [(2006)], at McKinley elementary school, which is a public school in the Tacoma Public School District. During the entire period between December 1, 2006 and February 28, 2007, O.E. was a 4th grade student of the school (McKinley Elementary) and was under Jennifer Leigh Rice's authority and supervision, as contemplated in the definition of "predatory" as set forth in [former] RCW 9.94A.030.

During the period between December 1, 2006 and February 28, 2007, Jennifer Leigh Rice had sexual contact with O.E. by rubbing O.E.'s penis with her hand for purposes of their mutual sexual gratification. This act occurred in the residence of Jennifer Leigh Rice in Yelm, Washington. Furthermore, this act was unlawful and felonious. O.E. was 10 years old and Jennifer Leigh Rice was his teacher at that time, as set forth above.

Jennifer Leigh Rice, who resided in Yelm, Washington, had parked her car near O.E.'s residence in Tacoma, Washington during the evening of August 10, 2007. During the morning

---

[1] RAP 10.10.

hours of August 11, 2007, O.E. left his house and met Jennifer Leigh Rice in her parked car. During the period between the 10th day of August 2007 and the 11th day of August 2007, Jennifer Leigh Rice did thereby unlawfully and feloniously, with intent to facilitate the crime of rape of a child in the first degree, intentionally abduct O.E. The abduction was accomplished by Jennifer Leigh Rice restraining O.E. in her car and driving him to Ellensburg, WA. At a rest stop near Ellensburg WA, Jennifer Rice engaged in penile-vaginal sexual intercourse with O.E. Jennifer Leigh Rice restricted O.E.'s movements without lawful authority and in a manner that interfered substantially with O.E.'s liberty. This was accomplished by O.E.'s acquiescence, as O.E. was 10 years of age at the time, and his parent, guardian, or other person or institution having lawful control or custody of O.E. had not acquiesced to any of these acts. Because O.E. was secreted and held in Jennifer Leigh Rice's moving car, O.E. was in a place and under circumstances where he was unlikely to be found, especially by those persons directly affected by the child's disappearance such as O.E.'s parents and siblings. O.E's parents and siblings did not know where O.E. was until O.E. was returned home during the afternoon of August 11, 2007. During this entire time, Jennifer Leigh Rice and O.E. were in the State of Washington. One of the purposes for which Jennifer Leigh Rice committed the crime of Kidnapping was for the purpose of her sexual gratification.

R.E., who is O.E.'s older brother, was born on March 2, 1992. R.E. is not currently and never has been married to Jennifer Leigh Rice. That during the period between the 11th day of July 2007 and the 20th day of July, 2007, Jennifer Leigh Rice did engage in penile-vaginal sexual intercourse with R.E. on two separate occasions occurring on two separate dates and at two separate locations. Each act of intercourse occurred in the State of Washington. R.E. was 15 years of age at the time, and the defendant was more than 48 months older than R.E.

Clerk's Papers at 62-64.

¶4 On August 13, 2007, the State charged Rice with first degree kidnapping of O.E. This charge included a sexual

motivation special allegation under former RCW 9.94A.835.[2] On September 12, the State filed an amended information adding six counts of first degree child rape related to various sexual encounters with O.E. between April 2007 and August 2007; four counts of first degree child molestation related to various sexual encounters with O.E. between December 2006 to August 2007; and two counts of third degree child rape related to sexual encounters with R.E. in July and August 2007. One of the first degree child molestation counts (count IV) included a predatory[3] offense special allegation under RCW 9.94A.836.[4] All of the counts in the amended informa-

---

[2] Former RCW 9.94A.835 states,

(1) The prosecuting attorney shall file a special allegation of sexual motivation in every criminal case, felony, gross misdemeanor, or misdemeanor, other than sex offenses as defined in [former RCW 9.94A.030(42)(a) or (c)] when sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact-finder.

(2) In a criminal case wherein there has been a special allegation the state shall prove beyond a reasonable doubt that the accused committed the crime with a sexual motivation. The court shall make a finding of fact of whether or not a sexual motivation was present at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it finds the defendant guilty, also find a special verdict as to whether or not the defendant committed the crime with a sexual motivation. This finding shall not be applied to sex offenses as defined in [former RCW 9.94A.030(42)(a) or (c)].

(3) The prosecuting attorney shall not withdraw the special allegation of sexual motivation without approval of the court through an order of dismissal of the special allegation. The court shall not dismiss this special allegation unless it finds that such an order is necessary to correct an error in the initial charging decision or unless there are evidentiary problems which make proving the special allegation doubtful.

[3] Former RCW 9.94A.030(35) defines "predatory" in relevant part:

(c) the perpetrator was: (i) A teacher, counselor, volunteer, or other person in authority in any public or private school and the victim was a student of the school under his or her authority or supervision. For purposes of this subsection, "school" does not include home-based instruction as defined in RCW 28A.225.010.

[4] RCW 9.94A.836 states,

(1) In a prosecution for rape of a child in the first degree, rape of a child in the second degree, or child molestation in the first degree, the prosecuting attorney shall file a special allegation that the offense was predatory whenever sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding by a reasonable and objective fact finder that

tion included requests for an aggravating exceptional sentence based on the number of current crimes and a concern that the length of any sentence would permit some crimes to go unpunished. Former RCW 9.94A.535(2) (2005).[5]

¶5 On May 15, 2008, Rice moved to dismiss the predatory offense special allegation and the State's requests for an aggravating exceptional sentence. The trial court denied the motion to dismiss the predatory offense special allegation and reserved judgment on the aggravating exceptional sentence issue.

¶6 On April 20, 2009, the trial court held a hearing that began with the State filing a second amended information containing only four charges from the first amended information, including (1) the first degree kidnapping of O.E. charge, with a sexual motivation special allegation under former RCW 9.94A.835, and a new additional special allegation that the victim was less than 15 years old, under RCW 9.94A.837 (count I);[6] (2) a first degree child molestation charge for sexual contact with O.E., which included a

_____

the offense was predatory, unless the prosecuting attorney determines, after consulting with a victim, that filing a special allegation under this section is likely to interfere with the ability to obtain a conviction.

(2) Once a special allegation has been made under this section, the state has the burden to prove beyond a reasonable doubt that the offense was predatory. If a jury is had, the jury shall, if it finds the defendant guilty, also find a special verdict as to whether the offense was predatory. If no jury is had, the court shall make a finding of fact as to whether the offense was predatory.

(3) The prosecuting attorney shall not withdraw a special allegation filed under this section without the approval of the court through an order of dismissal of the allegation. The court may not dismiss the special allegation unless it finds that the order is necessary to correct an error in the initial charging decision or that there are evidentiary problems that make proving the special allegation doubtful.

[5] Former RCW 9.94A.535(2) states in relevant part,

The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under the following circumstances:

. . . .

(c) The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished.

[6] RCW 9.94A.837 states,

(1) In a prosecution for rape in the first degree, rape in the second degree, indecent liberties by forcible compulsion, or kidnapping in the first degree with

predatory offense special allegation under RCW 9.94A.836 (count IV); and (3) the two counts of third degree child rape for sexual contact with R.E. (counts XII and XIII). In the second amended information, the State dropped the request for an aggravated exceptional sentence under former RCW 9.94A.535(2), but it requested sentencing under the nonpersistent offenders sentencing statute, former RCW 9.94A.712 (2006).[7] Rice had notice of the second amended information.

¶7 Next at the hearing, Rice waived her right to a jury trial and entered into an agreement with the State wherein she stipulated to the aforementioned underlying facts, stipulated that the facts were sufficient to support convictions for the charges and special allegations in the second amended information, and waived her right to challenge the convictions on sufficiency of evidence grounds on appeal. The trial court accepted the stipulated agreement as a knowing, intelligent, and voluntary decision. Based on the stipulated facts, the trial court entered guilty verdicts for

---

sexual motivation, the prosecuting attorney shall file a special allegation that the victim of the offense was under fifteen years of age at the time of the offense whenever sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding by a reasonable and objective fact finder that the victim was under fifteen years of age at the time of the offense, unless the prosecuting attorney determines, after consulting with a victim, that filing a special allegation under this section is likely to interfere with the ability to obtain a conviction.

(2) Once a special allegation has been made under this section, the state has the burden to prove beyond a reasonable doubt that the victim was under fifteen years of age at the time of the offense. If a jury is had, the jury shall, if it finds the defendant guilty, also find a special verdict as to whether the victim was under the age of fifteen at the time of the offense. If no jury is had, the court shall make a finding of fact as to whether the victim was under the age of fifteen at the time of the offense.

(3) The prosecuting attorney shall not withdraw a special allegation filed under this section without the approval of the court through an order of dismissal of the allegation. The court may not dismiss the special allegation unless it finds that the order is necessary to correct an error in the initial charging decision or that there are evidentiary problems that make proving the special allegation doubtful.

[7] In 2008, the legislature amended and recodified former RCW 9.94A.712 at RCW 9.94A.507 as the sentencing of sex offenders statute. LAWS OF 2008, ch. 231, § 56.

all four counts and the corresponding special allegations that were included in the second amended information.

¶8 Last, at this hearing, after entering the guilty verdicts, the trial court accepted an amendment to the stipulated agreement. The amendment clarified that after a successful appeal, during any remand and resentencing without the special allegations, Rice could argue for a minimum sentence at the low end of the standard sentencing range and that the State could argue for a sentence at the high end of the standard sentencing range.

¶9 On July 24, 2009, the trial court sentenced Rice to two concurrent life sentences with a mandatory minimum term of 25 years confinement on the first degree kidnapping with sexual motivation conviction involving a victim less than 15 years old and the predatory first degree child molestation (counts I and IV). The trial court ordered indefinite community custody based on these convictions. The trial court also sentenced Rice to two concurrent 60 month sentences on the two third degree child rape convictions (counts XII and XIII). Rice timely appeals.

## ANALYSIS

SEPARATION OF POWERS

¶10 Rice contends that RCW 9.94A.836 and .837 and former RCW 9.94A.835 violate the separation of powers doctrine. Specifically, she argues that the legislature encroached on executive power by enacting statutes that limit a prosecutor's discretion by requiring a prosecutor to charge these special allegations in specific instances such that the statutes prohibit a prosecutor from plea bargaining.[8] The

---

[8] As an initial matter, we note a concern about Rice's standing to bring this challenge. "Only an aggrieved party may seek review by the appellate court." RAP 3.1. An aggrieved party must have a present substantial interest in the subject matter of the appeal and must be aggrieved " 'in a legal sense.' " *State v. Mahone*, 98 Wn. App. 342, 347-48, 989 P.2d 583 (1999) (quoting *State ex rel. Simeon v. Superior Court*, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944)). Here, Rice asserts as grounds for remand and resentencing that the statutes infringe on a prosecutor's ability to plea bargain with her. But a criminal defendant does not have a

State argues that the legislature did not violate the separation of powers doctrine because article XI, section 5 of the Washington Constitution grants the legislature authority to define the duties and authorities of prosecuting attorneys.[9] Because the plain language of the challenged statutes continues to give a prosecutor discretion as to when to file the special allegations, Rice has failed to meet her burden of proving the unconstitutionality of these statutes beyond a reasonable doubt and her claim fails.

¶11 The decision to determine and file appropriate charges is vested in the prosecuting attorney as a member of the executive branch. *State v. Walsh*, 143 Wn.2d 1, 10, 17 P.3d 591 (2001) (Alexander, C.J., concurring); *State v. Tracer*, 155 Wn. App. 171, 182, 229 P.3d 847 (citing *State v. Lewis*, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990)), *review granted*, 169 Wn.2d 1010 (2010); *State v. Meacham*, 154 Wn. App. 467, 471, 225 P.3d 472 (2010); *see also State v. Korum*, 157 Wn.2d 614, 655, 141 P.3d 13 (2006) (J.M. Johnson, J., concurring in part) (prosecutor's discretion to file charges is an executive function). Deciding whether to plea bargain with a criminal defendant is a function delegated entirely to the executive branch. *State v. Crawford*, 159 Wn.2d 86, 102,

constitutional right to a plea bargain. *State v. Yates*, 161 Wn.2d 714, 741, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008); *State v. Tracer*, 155 Wn. App. 171, 190, 229 P.3d 847, *review granted*, 169 Wn.2d 1010 (2010); *see Weatherford v. Bursey*, 429 U.S. 545, 560-61, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977). Accordingly, because Rice has no right to a plea bargain, she may not be aggrieved in a legal sense by any separation of powers violations if they exist. Moreover, the record shows that in spite of the State's filing these special allegations in this case, the State and Rice did reach an agreement wherein the State dropped several of the charges in exchange for Rice's stipulating to the facts and their sufficiency to prove the remaining charges. But neither party asked us to address questions regarding Rice's standing, and we note that by the nature of her stipulated agreement, Rice preserved the right to challenge the constitutionality of these statutes on appeal.

[9] Article XI, section 5 of the Washington Constitution states,

*The legislature*, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, *prosecuting attorneys* and other county, township or precinct and district officers, as public convenience may require, *and shall prescribe their duties*, and fix their terms of office.

(Emphasis added.)

147 P.3d 1288 (2006); *Tracer*, 155 Wn. App. at 187; *see State v. Moen*, 150 Wn.2d 221, 227, 76 P.3d 721 (2003).

¶12 We review the constitutionality of a statute de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). We presume that a statute is constitutional and the burden rests on the challenging party, here Rice, to prove beyond a reasonable doubt its unconstitutionality. *State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 335, 12 P.3d 134 (2000).[10]

¶13 But we do not make determinations on constitutional issues unless necessary to the determination of a case. *State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981). We review the construction of a statute de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). Our primary

---

[10] Our Supreme Court recently discussed the appropriate language and understanding of the standard of review in challenges to the constitutionality of a statute. *Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 244 P.3d 1 (2010). A majority of our Supreme Court agreed that the "beyond a reasonable doubt" standard, insofar as this standard means that an appellate court is "'fully convinced, after a searching legal analysis, that the statute violates the constitution,'" is the appropriate standard of review. *Sch. Dists.'*, 170 Wn.2d at 615 (Stephens, J., concurring) (internal quotation marks omitted) (quoting majority at 606).

We do not understand this rephrasing of the standard to be a material departure from the previous standard of review. If it were, it would eradicate the precedential value of all prior cases upholding the constitutionality of a statute, open the floodgates to revive prior statutory constitutional challenges on collateral attack, and raise significant separation of powers concerns. Moreover, such a rephrasing of the standard is not particularly new and the same conceptual understanding of the standard has persisted despite the standard's exact iteration at any single point in time. *See, e.g., Tunstall v. Bergeson*, 141 Wn.2d 201, 220, 5 P.3d 691 (2000) (describing the beyond a reasonable doubt standard of review in challenges to the constitutionality of statutes as a "demanding standard of review"); *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998) (applying a beyond a reasonable doubt standard to a challenge of the constitutionality of a statute and stating that "we are hesitant to strike a duly enacted statute unless fully convinced, after a searching legal analysis, that the statute violates the constitution"); *Grant v. Spellman*, 99 Wn.2d 815, 819, 664 P.2d 1227 (1983) ("When interpreting a statute, every presumption favors validity of an act of the Legislature, all doubts must be resolved in support of an act, and it will not be declared unconstitutional unless it clearly appears to be so."); *State v. Leek*, 26 Wn. App. 651, 658, 614 P.2d 209 ("[A] statute is presumed constitutional and will not be judicially declared otherwise unless its repugnance to the constitution clearly appears."), *review denied*, 94 Wn.2d 1022 (1980); *see also In re Pers. Restraint of Young*, 122 Wn.2d 1, 59, 857 P.2d 989 (1993) (holding that the basic statutory scheme for civilly committing sexually violent predators does not violate substantive due process "after a searching inquiry").

duty in interpreting statutes is to determine and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the statute's plain language and ordinary meaning is clear, we look only to the statute's language to determine intent. *Wentz*, 149 Wn.2d at 346.

¶14 We do not directly address Rice's separation of powers arguments because they rely on the faulty premise that RCW 9.94A.836 and .837, and former RCW 9.94A.835 limit a prosecutor's discretion to file the corresponding special allegations. Former RCW 9.94A.835(1) states that for certain charged sex offenses, "[t]he prosecuting attorney *shall* file a special allegation of sexual motivation *when sufficient admissible evidence exists*, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact-finder." (Emphasis added.) The other challenged RCWs contain substantially similar language.[11]

¶15 Despite the use of the words "shall" and "when"/ "whenever," under these three statutes, a prosecutor retains discretion to file or not file the special allegations. Under the statutes, a prosecutor must evaluate the admissibility of evidence and determine the strength of that evidence for obtaining a finding on the special allegation. Accordingly, a prosecutor takes the same actions when deciding whether to file a special allegation as he/she does when determining and deciding what crimes to charge. In both instances, a prosecutor evaluates whether the evidence supports various outcomes and then, based on that evaluation, files or does not file charges and/or special allegations believed appropriate.

¶16 RCW 9.94A.836 and .837 include additional language that further delineates the discretion that a prosecutor has for filing the predatory and victim age special

---

[11] In RCW 9.94A.836(1) and .837(1), the first "when" is replaced with "whenever" and the final prepositional phrases are transposed, stating, "[W]ould justify a finding by a reasonable and objective fact finder [that the offense was predatory/that the victim was under 15 years of age at the time of the offense]."

allegations. These two statutes provide that the prosecuting attorney "shall file a special allegation . . . *unless* the prosecuting attorney determines, after consulting with a victim, that filing a special allegation under this section is likely to interfere with the ability to obtain a conviction." RCW 9.94A.836(1), .837(1) (emphasis added). Accordingly, even if a prosecutor believes the evidence is strong enough for a reasonable fact finder to enter a finding on either of these two special allegations, he or she can choose (i.e., exercise discretion) not to file the special allegations under certain circumstances. For example, a child victim might refuse to testify at a trial involving a predatory special allegation for fear of consequences to a close family friend being denominated as a "predator." In such an instance, the statute affords a prosecutor the discretion *not* to file the predatory special allegation.

¶17 Contrary to Rice's interpretation of these statutes, a prosecutor must evaluate the individual circumstances of the case to determine whether a special allegation is warranted and is not required to bring the special allegations each and every time he or she files charges of one of the enumerated sex offenses. A plain reading of the statutes belies Rice's argument that the legislature eviscerated the exercise of prosecutorial discretion necessary before filing these special allegations.

¶18 Moreover, the legislature has the power to define crimes and fix penalties for crimes. *State v. Varga*, 151 Wn.2d 179, 193, 86 P.3d 139 (2004); *State v. Bryan*, 93 Wn.2d 177, 181, 606 P.2d 1228 (1980) ("Determination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts."). Here, the legislature merely requires the prosecutor to *sometimes* file these special allegations *when evidence supports them*. We draw an analogy to the aggravated murder statute where the legislature has prescribed that *when evidence supports and results in* an aggravated first degree murder conviction, the sentence *must* be either death or life without the possibility of parole and not simply a life sentence. Former RCW 10.95.030 (1993).

¶19 Accordingly, the three challenged statutes do not unconstitutionally limit prosecutorial discretion, nor do they mandate filing special allegations regardless of the individual circumstances of a case. The plain language of the statutes reveals that the legislature did not usurp the prosecutor's charging powers, a core function of the executive branch, when enacting the three challenged statutes. Rice has failed to meet her burden of proving that the statutes are unconstitutional beyond a reasonable doubt and her claim fails.

TRIAL COURT INVOLVEMENT IN PLEA BARGAINING

¶20 Next, Rice argues that RCW 9.94A.836 and .837 and former RCW 9.94A.835 improperly inject the judiciary into the plea bargaining process. Specifically, Rice argues that RCW 9.94A.421 prohibits a trial court from participating in the plea bargaining process, whereas the three challenged statutes require the trial court to actively engage in the plea bargaining process. In addition, Rice argues that the three challenged statutes conflict with our decision in *State v. Pouncey*, 29 Wn. App. 629, 630 P.2d 932, *review denied*, 96 Wn.2d 1009 (1981), adopting American Bar Association (ABA) standards restricting a trial court's involvement in plea bargaining. We disagree.

¶21 We review statutory construction de novo. *Wentz*, 149 Wn.2d at 346. Our primary duty in interpreting statutes is to determine and implement the legislature's intent. *J.P.*, 149 Wn.2d at 450. If the statute's plain language and ordinary meaning is clear, we look only to the statute's language to determine intent. *Wentz*, 149 Wn.2d at 346. We read provisions of a statute together to determine the legislative intent underlying the entire statutory scheme to achieve a harmonious and unified statutory scheme. *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282, *cert. denied*, 531 U.S. 984 (2000). We read statutes relating to the same subject as complementary, instead of in conflict with each other. *Chapman*, 140 Wn.2d at 448.

¶22 Here, the three challenged statutes and RCW 9.94A.421 are complementary and do not conflict regarding

the trial court's role in the plea bargaining process. A trial court cannot "participate in any discussions" between the State and a criminal defendant regarding plea agreements. RCW 9.94A.421. Under the three challenged statutes, a prosecuting attorney must seek trial court approval to dismiss any of these special allegations and the trial court cannot dismiss any of these special allegation unless it determines that it is "necessary to correct an error in the initial charging decision or . . . there are evidentiary problems that[12] make proving the special allegation doubtful." RCW 9.94A.836(3), .837(3); former RCW 9.94A.835(3).[13]

¶23 There is no conflict between prohibiting the trial court from participating in plea bargain discussions under RCW 9.94A.421, yet allowing the trial court to determine whether a special allegation should be dismissed from the charges, as prescribed under the three challenged statutes. Determining the State's ability to withdraw any of these special allegations is not a violation of the legislature's prohibition of a trial court's participation in plea bargain *discussions*. Although the trial court's rulings on purely legal questions may impact the parties' plea bargaining process, that the trial court makes *legal rulings* does not constitute a violation of the legislature's prohibition on a trial court participating in plea bargaining *discussions*.

¶24 In addition, requiring the trial court's approval before the State can withdraw a special allegation accords with other trial court powers over some aspects of prosecutorial charging decisions. For example, a trial court can reject a plea agreement that is not "consistent with the interests of justice and with the prosecuting standards."

---

[12] RCW 9.94A.836(3) and .837(3) use the word "that" whereas former RCW 9.94A.835(3) uses "which."

[13] Former RCW 9.94A.835(3) dictates that the trial court "*shall* not dismiss this special allegation" unless one of the conditions is met, whereas RCW 9.94A.836(3) and .837(3) dictate that the trial court "*may* not dismiss the special allegation" unless one of the conditions is met. (Emphasis added.)

RCW 9.94A.431(1); CrR 4.2(e);[14] *State v. Conwell*, 141 Wn.2d 901, 909, 10 P.3d 1056 (2000). A trial court has discretion to reject any amendments to the charging information. CrR 2.1(d);[15] *State v. Haner*, 95 Wn.2d 858, 864-65, 631 P.2d 381 (1981); *State v. Powell*, 34 Wn. App. 791, 793, 664 P.2d 1 (1983), *review denied*, 100 Wn.2d 1035 (1984). Rice argues that these trial court powers are distinguishable because they "have to do with the court's duty to find probable cause that a crime has been committed and the court's duty to assure that proceedings are fundamentally fair." Reply Br. of Appellant at 9 n.3. We disagree with Rice and see no meaningful distinction between the trial court's necessary approval for the State to withdraw a special allegation under the three challenged statutes and the trial court's discretionary authority to allow the State to amend charging information and reject plea agreements.

¶25 For similar reasons, Rice's argument that the three challenged statutes irreconcilably conflict with ABA standards adopted by us in *Pouncey* fails. In *Pouncey*, we reviewed and adopted former ABA standards addressing a trial court's involvement in plea bargaining. 29 Wn. App. at 635-36. Current ABA standards state that a trial judge "should not through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered." ABA STANDARDS FOR CRIMINAL JUSTICE: PLEAS OF GUILTY std. 14-3.3(c) (3d ed. 1999). Ruling on questions of law that influence the plea bargaining process is not the same as communicating with a defendant about whether to accept or reject any particular plea bargain offer. The language in the three challenged statutes requiring the trial court to evaluate any State requests to with-

[14] We note that CrR 4.2(e) cites to former RCW 9.94A.090 (1995) as the authority for a trial court to reject a plea agreement. The legislature recodified former RCW 9.94A.090 at RCW 9.94A.431. LAWS OF 2001, ch. 10, § 6.

[15] CrR 2.1(d) states, "The court *may* permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." (Emphasis added.)

draw special allegations does not conflict with the ABA standards adopted in *Pouncey.*

¶26 RCW 9.94A.836 and .837 and former RCW 9.94A.835 do not inappropriately involve a trial court in the plea bargaining process in violation of RCW 9.94A.421 and the ABA standards we adopted in *Pouncey.* Rather, the challenged statutes set out guidelines for a trial court to follow. Accordingly, we hold that RCW 9.94A.836 and .837 and former RCW 9.94A.835 do not improperly inject the judiciary into the plea bargaining process and Rice's challenges fail.

### Due Process and Eighth Amendment

¶27 Next, Rice contends that RCW 9.94A.836 and .837 and former RCW 9.94A.835 are unconstitutional because they violate her due process rights and the Eighth Amendment. Specifically, she argues that these statutes limit prosecutorial discretion in charging crimes because they prevent a prosecutor from taking into consideration mitigating circumstances. The State argues that no due process violation exists because a prosecutor can consider mitigating circumstances and negotiate with a defendant before filing the charging information. In addition, the State argues that Rice has not met her burden of showing that her sentence rises to the level of cruel and unusual punishment. We discern no error.

¶28 Rice's due process and Eighth Amendment challenges fail because she relies again on the same faulty misunderstanding of the three challenged statutes that underlie her separation of powers claim. As we have already explained, under the plain language of the statutes, prosecutors maintain discretion in charging both underlying crimes and the special allegations.

¶29 There are at least two points where a prosecutor can review the individual circumstances of a case and exercise discretion. First, a prosecutor can assess any mitigating or aggravating factors before filing charges. A prosecutor may then choose to file charges that do not include the crimes

enumerated in the three challenged statutes and, thus, avoid all of Rice's perceived constitutional violations because the challenged statutes would not apply. Second, even if the prosecutor determined that the individual circumstances of the case warranted charging offenses that required *consideration* of filing the special allegations in the challenged statutes, as we previously discussed, the statutes afford the prosecutor latitude in whether to file the special allegations following such consideration. Because the foundation of Rice's due process and Eighth Amendment challenges is rooted in the misperception that prosecutors lack discretion under the statutes, her claims fail.

¶30 To the extent Rice's arguments rely on *State v. Pettitt*, 93 Wn.2d 288, 609 P.2d 1364 (1980), and *State v. Green*, 91 Wn.2d 431, 588 P.2d 1370 (1979), *adhered to in part on recons.*, 94 Wn.2d 216, 616 P.2d 628 (1980), these cases are distinguishable. In *Green*, our Supreme Court held that a mandatory death penalty statute was unconstitutional because it did not allow for a consideration of " 'whatever mitigating circumstances may be relevant to either the particular offender or the particular offense.' " 91 Wn.2d at 445 (quoting *Roberts v. Louisiana*, 431 U.S. 633, 637, 97 S. Ct. 1993, 52 L. Ed. 2d 637 (1977)). In *Pettitt*, our Supreme Court held that a "fixed formula which requires a particular action *in every case* upon the happening of a specific series of events constitutes an abuse of the discretionary power lodged in the prosecuting attorney." 93 Wn.2d at 296. These cases are distinguishable because the statute and policy struck down in those cases involved mandatory actions by a prosecutor. The statutes challenged in this case do not mandate any actions, despite Rice's repeated claims to the contrary.

Sentencing Enhancement Double Jeopardy Issue

¶31 Rice next challenges the imposition of a sentencing enhancement on her first degree kidnapping conviction as a violation of her right to be free from double jeopardy. Specifically, Rice argues that because the predicate

first degree child molestation charge used to charge first degree kidnapping in this case necessarily involves a child victim less than 15 years old, receiving a sentencing enhancement under RCW 9.94A.837, based on O.E.'s young age, constitutes a second punishment for the same offense. We disagree. RCW 9.94A.837 is akin to a sentencing enhancement statute, and our Supreme Court recently rejected similar double jeopardy sentencing enhancement arguments in *State v. Kelley*, 168 Wn.2d 72, 226 P.3d 773 (2010), and *State v. Aguirre*, 168 Wn.2d 350, 229 P.3d 669 (2010).

¶32 Rice's conviction for first degree kidnapping resulted from her abduction of O.E. with the intent to commit a felony, to-wit: first degree child molestation. RCW 9A.40.020(1)(b). First degree child molestation requires that a person have "sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). For Rice's offender score of 9, the standard range sentence for her first degree kidnapping conviction was 149 months to 198 months (to life).

¶33 On a finding of the RCW 9.94A.837 special allegation, a defendant's sentence must be enhanced. Sentencing enhancements increase the presumptive or standard sentencing range, but they do not require a finding of an aggravating factor that allows the trial court to consider imposing an exceptional sentence outside the presumptive or standard sentencing range. *State v. Silva-Baltazar*, 125 Wn.2d 472, 475, 886 P.2d 138 (1994). Here, former RCW 9.94A.712(3)(c)(ii) required that after a finding under RCW 9.94A.837 that a victim was less than 15 years old at the time of the offense, the "minimum term shall be either the maximum of the standard sentence range for the offense or twenty-five years, whichever is greater." Accordingly, the

trial court's finding related to the RCW 9.94A.837 special allegation resulted in an enhancement of Rice's standard range sentence by raising her standard minimum sentence.[16]

¶34 In *Kelley* and *Aguirre*, our Supreme Court rejected similar double jeopardy sentencing enhancement arguments in the context of firearm and deadly weapon sentencing enhancements. The *Aguirre* and *Kelley* courts held that the imposition of a sentencing enhancement does not violate double jeopardy, even when it coincides with an underlying element of the related conviction. *Aguirre*, 168 Wn.2d at 367 ("[A]dding a deadly weapon enhancement to Aguirre's sentence for second degree assault, an element of which is being armed with a deadly weapon, did not offend double jeopardy."); *Kelley*, 168 Wn.2d at 84 ("[I]mposition of a firearm enhancement does not violate double jeopardy when an element of the underlying offense is use of a firearm."); *see also State v. Eaton*, 143 Wn. App. 155, 160, 177 P.3d 157 (2008) (sentencing enhancements are not separate substantive criminal offenses from the underlying predicate offense), *aff'd*, 168 Wn.2d 476, 229 P.3d 704 (2010).

¶35 Without citing authority or analysis, Rice asserts that the *Kelley* court's sentencing enhancement double jeopardy analysis does not apply. We do not consider arguments not developed in the briefs and for which a party has not cited authority. RAP 10.3(a)(6); *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (citing *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986)). Here, as in *Kelley* and *Aguirre*, Rice's legislatively mandated sentence enhancement does not constitute double jeopardy. Rice's claim fails.

LEGALITY OF SENTENCE

¶36 In her SAG, Rice argues that former RCW 9.94A.712, a statute that required the addition of two concurrent mandatory minimum 25-year sentences to her sentence,

---

[16] We note that Rice's Sixth Amendment jury trial rights are not implicated in this case because she waived her right to a jury trial and stipulated that sufficient evidence supports the charged special allegations.

violates the trial court's general SRA discretionary sentencing authority under former RCW 9.94A.535. We disagree. Former RCW 9.94A.712, not former RCW 9.94A.535, controls Rice's sentence.

¶37 Generally, issues may not be raised for the first time on appeal. RAP 2.5(a). Moreover, in the sentencing context, the general rule is that "[a] sentence within the standard sentence range . . . for an offense shall not be appealed." RCW 9.94A.585(1). "Illegal or erroneous sentences, however, may be challenged for the first time on appeal." *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000, *review denied*, 141 Wn.2d 1030 (2000). Accordingly, although Rice did not object at her sentencing hearing, she can challenge the legality of her sentence for the first time on appeal.

¶38 We review statutory construction de novo. *Wentz*, 149 Wn.2d at 346. Where two statutes relating to the same subject are in apparent conflict, we reconcile them, if possible, so that each may be given effect. *State v. Fagalde*, 85 Wn.2d 730, 736, 539 P.2d 86 (1975). When two statutes pertain to the same subject matter and a conflict cannot be harmonized, the more specific statute supersedes the general statute. *State v. Conte*, 159 Wn.2d 797, 810, 154 P.3d 194, *cert. denied*, 552 U.S. 992 (2007).

¶39 Former RCW 9.94A.535 establishes the general rules for when a sentencing court can deviate from SRA standard range sentences. Former RCW 9.94A.712(3) governs the trial court's sentencing authority for certain enumerated sex offenses and provides,

> (c)(i) *Except as provided in (c)(ii) of this subsection,* the minimum term shall be either within the standard sentence range for the offense, or outside the standard sentence range pursuant to [former] RCW 9.94A.535, if the offender is otherwise eligible for such a sentence.

(Emphasis added.) Subsection (3)(c)(ii) lists several sex offenses, including (1) first degree kidnapping with sexual motivation involving a minor less than 15 years old and (2)

predatory first degree child molestation, that are subject to mandatory minimum 25-year sentences. Former RCW 9.94A.712(3)(c)(ii). Accordingly, the legislature specifically and expressly limited the trial court's sentencing authority for Rice's convictions. A trial court may exercise discretion in sentencing only where the SRA authorizes discretion. *State v. Shove*, 113 Wn.2d 83, 86-87, 776 P.2d 132 (1989). Thus, the sentencing court applied former RCW 9.94A.712 and properly imposed the mandatory minimum sentence it requires.[17] Rice's challenge to the legality of her sentence fails.

Sentencing Conflict with the Purpose of the SRA

¶40 In the second half of her SAG, Rice argues that her mandatory minimum sentencing conflicts with each of the seven stated purposes of the SRA. We cannot consider many of Rice's arguments and otherwise discern no error.

¶41 The purposes of the SRA are to (1) ensure that punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history, (2) promote respect for the law by providing punishment that is just, (3) provide commensurate punishment between offenders who commit similar offenses, (4) protect the public, (5) offer the offender an opportunity to improve herself, (6) make frugal use of state and local government resources, and (7) reduce the risk of reoffending in the community. RCW 9.94A.010. Purposes enumerated in the SRA are not in and of themselves mitigating factors in sentencing and may only provide support for exceptional

---

[17] Moreover, the legislature has amended RCW 9.94A.535 many times over the years, but because of the date of Rice's crime, the 2005 version of RCW 9.94A.535 applies. *Compare* Laws of 2005, ch. 68, §§ 3, 7 (providing for the effective date of statutory amendments upon the governor's signature, which occurred on April 15, 2005), *with* Laws of 2007, ch. 377, § 10 (effective July 22, 2007). In contrast, the legislature's 2006 amendments to former RCW 9.94A.712 were in effect at the time of Rice's crime. Laws of 2006, ch. 122, §§ 5, 9 (providing for the effective date of statutory amendments on July 1, 2006). A more recent provision that is more specific than a previously enacted provision prevails. *J.P.*, 149 Wn.2d at 454. Here, former RCW 9.94A.712 is the more recently amended and more specific statute and controls over former RCW 9.94A.535.

sentences downward once the trial court identifies a mitigating circumstance. *State v. Calvert*, 79 Wn. App. 569, 581, 903 P.2d 1003 (1995), *review denied*, 129 Wn.2d 1005 (1996).

¶42 As an initial matter, we note that Rice did not present any arguments or testimony at sentencing requesting a downward departure from the mandatory minimum sentence. Even if the sentencing court had discretion to impose a sentence below the mandatory minimum of 25 years, which it did not, merely citing to the purposes of the SRA as grounds for a downward sentence is not enough to justify a downward departure. *See* former RCW 9.94A-.712(3)(c)(ii). Rice would have needed to show specific mitigating circumstances at the sentencing hearing for the trial court to consider. *See State v. Freitag*, 127 Wn.2d 141, 145, 896 P.2d 1254, 905 P.2d 355 (1995) (stating that the legislature has already considered the purposes of the SRA in establishing the presumptive sentencing ranges).

¶43 Reaching the merits of Rice's arguments, first she asks us to entertain problems with her offender score calculation that might occur on remand to ensure her sentence is proportionate to the seriousness of her offense. RCW 9.94A.010(1); SAG at 21 ("Should my case be remanded for resentencing I will be sentenced as if I have a significant criminal record."), 23 ("There is a possibility that my case will be remanded for resentencing in the future. At that time I believe several individual factors should be considered as well as how my offender score will be calculated."). We do not consider what might happen on a speculative remand and do not issue advisory opinions. *State v. Eggleston*, 164 Wn.2d 61, 76-77, 187 P.3d 233 (declining to consider an issue concerning proceedings on remand since it was entirely speculative whether the issue would arise), *cert. denied*, 555 U.S. 1075 (2008); *State v. Davis*, 163 Wn.2d 606, 616-17, 184 P.3d 639 (2008) (declining to consider an issue that might not arise on remand).

¶44 Next, Rice reasserts her other SAG argument that mandatory minimum sentences conflict with a trial court's discretionary sentencing authority under the SRA and

deprive her of "individualized justice." SAG at 31; RCW 9.94A.010(2). For reasons we already discussed, this argument lacks merit.

¶45 Rice further argues that her sentence is not commensurate with sentences imposed on others committing similar offenses. RCW 9.94A.010(3). Rice draws comparisons to less harsh sentences that Washington sex offenders received in cases where she believes the crimes were "similar" or "far more egregious." SAG at 34. But all of the cases that Rice cites are factually distinguishable because none of them involve first degree kidnapping with sexual motivation or predatory first degree child molestation convictions. *State v. Castro*, 141 Wn. App. 485, 170 P.3d 78 (2007) (involving a second degree child molestation conviction); *State v. Partee*, 141 Wn. App. 355, 170 P.3d 60 (2007) (concerning the revocation of a special sex offender sentencing alternative (SSOSA) imposed on second degree child rape and second degree child molestation convictions); *State v. McCormick*, 141 Wn. App. 256, 169 P.3d 508 (2007) (concerning the revocation of a SSOSA imposed on a first degree child rape conviction), *aff'd*, 166 Wn.2d 689, 213 P.3d 32 (2009); *State v. Ramirez*, 140 Wn. App. 278, 165 P.3d 61 (2007) (concerning the revocation of a SSOSA imposed on a first degree child rape conviction), *review denied*, 163 Wn.2d 1036 (2008); *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 165 P.3d 391 (2007) (concerning a jury waiver challenge related to first degree kidnapping and first degree child molestation convictions that did not include sexual motivation or predatory special allegations); *State v. Letourneau*, 100 Wn. App. 424, 997 P.2d 436 (2000) (concerning conditions of sentencing related to a second degree child rape conviction).

¶46 Moreover, it is unclear in many of these cases whether a plea agreement to reduce the number of charges was a factor in the resulting convictions and sentences, making it that much harder for us to consider whether Rice's sentence on her stipulated agreement, which reduced her number of charges, is more or less severe than the cases

she asserts are comparable. Finally, Rice attempts to make comparisons to sentences that sex offenders received under other states' statutory schemes. But we do not entertain comparisons with other state court rulings because the authority to fix punishments under sentencing guidelines belongs to the legislative bodies in each state and varies widely.

¶47 Next, Rice argues that several independent evaluators have determined that she is unlikely to reoffend and, therefore, that her sentence does not serve to "[p]rotect the public." RCW 9.94A.010(4). This argument considers evidence outside of the record on appeal. On direct appeal, we cannot consider matters outside the record. *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995).

¶48 Rice also contends that her sentence deprives her of the opportunity to improve herself because treatment programs in correctional centers prioritize admittance based on how close an offender is to completing her sentence. RCW 9.94A.010(5). She argues that she has tried to obtain voluntary treatment and her doctor believes that treatment outside of incarceration would be "much more appropriate." SAG at 39. The only part of the record discussing treatment programs is Rice's statement at the sentencing hearing that she would undergo voluntary treatment. Otherwise, Rice's argument relies on matters outside the record that we cannot consider. *McFarland*, 127 Wn.2d at 338 n.5.

¶49 Rice next argues that in light of the economic recession, her incarceration is too cost prohibitive and goes against the SRA's stated purpose of making "frugal use of the state's and local governments' resources." RCW 9.94A-.010(6). The purposes of the SRA are not in and of themselves mitigating factors in sentencing. *Calvert*, 79 Wn. App. at 581. Moreover, we disagree. Under the circumstances of this case, where Rice abused her position as a public elementary school teacher to engage in multiple inappropriate sexual contacts with two child victims over a period of several months, imposing the legislatively prescribed minimum sentence is not inconsistent with the SRA's intent to appropriately use state resources to protect children.

¶50 Last, Rice argues that because independent medical evaluators determined that she is not likely to reoffend, her sentence does nothing to "[r]educe the risk of reoffending." RCW 9.94A.010(7). Again, Rice relies on evidence outside the record that we cannot consider. *McFarland*, 127 Wn.2d at 338 n.5.

¶51 We hold that RCW 9.94A.836 and .837 and former RCW 9.94A.835 do not (1) violate the separation of powers doctrine, (2) improperly involve the trial court in the plea bargaining process, or (3) infringe on Rice's due process and Eighth Amendment rights. The imposition of a sentencing enhancement for Rice's victim being less than 15 years old did not violate her right to be free from double jeopardy. And the sentencing court had the authority and duty to impose the mandatory minimum 25-year sentence. Accordingly, we affirm.

HUNT and VAN DEREN, JJ., concur.

Review granted at 172 Wn.2d 1004 (2011).