COURT OF APPEALS DIV I
2014 MAR -3 AM 11: 13


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

v.

VINCENT OLIVER PETTIE,

               Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. 69697-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 3, 2014

SPEARMAN, A.C.J. — Vincent Pettie moved to withdraw his plea after he pleaded guilty to third degree assault and second degree burglary. The trial court denied the motion. He appeals, contending the trial court's involvement rendered the plea involuntary. He also claims in a statement of additional grounds that (1) he should be permitted to withdraw his plea because he received ineffective assistance of counsel; (2) the trial court improperly imposed an exceptional sentence; and (3) the court improperly calculated the statutory maximum penalty as the presumptive standard range. We conclude his claims lack merit and affirm.

## FACTS

On October 4, 2011, Vincent Pettie and John Wesley Jackson, Jr. entered the office of Anthony Narancic's boarding house, where Jackson had rented two rooms, to recover Jackson's $800 security deposit. Narancic had told Jackson

that the deposit would not be returned due to damage caused to the rooms. Finding Narancic inside the office, Jackson repeatedly struck him on the head and shoulders with a metal club covered by a sock. Pettie's alleged involvement included holding Narancic while Jackson struck him and driving Jackson away from the office. Police arrested Jackson later that day, and Narancic identified Pettie in a photo montage.

Jackson and Pettie were both charged with first degree assault. Pettie had two previous convictions for second degree attempted robbery; thus, a conviction for first degree assault or second degree assault (if the latter were to be submitted to the jury for consideration as a lesser included offense) would result in his third strike under the Persistent Offender Accountability Act ('POAA') of the Sentencing Reform Act of 1981, chapter 9.94A RCW. Shortly after trial began, Jackson reached a plea agreement.

After Jackson's plea, the prosecutor notified Pettie that the State would request a jury instruction on the lesser included offense of second degree assault. The trial court set out to clarify Pettie's understanding of the lesser included offense when Pettie said he did not know what it meant:

> THE COURT: The reason I want to bring [the lesser included offense] up to you is, particularly as to you, that's very important because I understand your [sic] facing your third strike.
>
> MR. PETTIE: Yes.
>
> THE COURT: So, you might, indeed, prevail and persuade the jury that this wasn't an assault [in the first degree] case because the injury wasn't enough.
>
> MR. PETTIE: Right.

> THE COURT: So, the jury could say it's okay, it's an Assault II
> case. And if they decide it was, and you were an accomplice, it's
> still your third strike.

Verbatim Report of Proceedings (VRP) (9/12/12) at 147-48. Then Pettie stated, "I just didn't really do anything." Id. at 148. The court responded:

> That's between you and your lawyer. It's my job to tell you the
> consequences here. It's not for me to tell you what to do about it.
> But, it is my job to make sure you are informed of the potential
> consequences of deciding to go ahead with the trial. When you said
> you don't know about the lesser included, that raises a red flag for
> me that you need to know about the lesser included.

Id. at 148-49. The trial court also told Pettie about a defendant who had been before the court in the past and had asserted his innocence. That defendant had been convicted and sentenced to life without parole because the court did not have discretion when the crime was the defendant's third strike. Id. at 150-51. The trial court later stated, "I want to be real clear. This is your life. It is not my job to tell you what to do. I cannot persuade you one way or another what to do. It's between you and your lawyer." Id. at 151. He told Pettie "obviously this is a very serious decision." Id. at 152. Right before Pettie entered his guilty plea, the court stated:

> You may full well think you did absolutely nothing wrong. It's up to
> the jury to decide whether that's true or not. You and your lawyer
> have to talk about all of the evidence that will be presented, and
> your lawyer gives you advice about what he thinks the likely
> outcome will be. And based upon his advice as to what the likely
> outcome would be, given what he anticipates all the evidence will
> be, you need to make your decision.
>
> I want you to be clear that coming in on Assault II for you is the
> same thing as coming in on Assault I for you, given the
> circumstances. For anyone else, it would be much different

3

because Assault I and Assault II have very, very different standards of ranges. Counsel, what do you want to do? Are we calling the jury back in? Has he made up his mind? Does he need more time?

Id. at 152-53. During a recess, the State and Pettie reached a plea agreement in which Pettie pleaded guilty to second degree burglary and third degree assault, avoiding his third strike. The parties agreed to the statutory maximum sentence for both charges: 120 months for the burglary count and 60 months for the assault count, to run consecutively. Pettie stated during a colloquy that he was making his plea knowingly and voluntarily. The court then confirmed the same. Pettie's plea agreement included a signed statement of guilt.

Shortly thereafter, both Pettie and Jackson brought motions to withdraw their guilty pleas. Pettie stated that he initially thought Jackson would exculpate him at trial, and Jackson's guilty plea fundamentally changed his trial strategy. Jackson's plea statement stated, "[Pettie] knew what I was doing and he held Mr. Narancic in place while I assaulted Mr. Narancic." VRP (9/12/12) at 136. Pettie argued that to allow only Jackson to withdraw his plea would result in a manifest injustice. The court denied both defendants' motions and imposed on Pettie the 180-month sentence recommended by the plea agreement.

For the first time on appeal, Pettie claims that his guilty plea was involuntary because the trial court impermissibly pressured him into entering a plea agreement. In his statement of additional grounds, Pettie also claims (1) his attorney provided ineffective assistance of counsel, (2) the trial court improperly imposed an exceptional sentence, and (3) the court improperly used the statutory maximum penalty as the presumptive standard range.

4

## DISCUSSION

### Motion to Withdraw Guilty Plea

We review a trial court's decision on whether to allow a defendant to withdraw a guilty plea for abuse of discretion. State v. Marshall, 144 Wn.2d 266, 280, 27 P.3d 192 (2001). A court must allow a defendant to withdraw a guilty plea as necessary to correct a manifest injustice. CrR 4.2(f). A manifest injustice occurs when a defendant's plea was involuntary. State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991). A guilty plea is involuntary if it was obtained by mental coercion by agents of the state. Brady v. United States, 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). When a trial court pressures or coerces a defendant, that influence may render the guilty plea involuntary. State v. Wakefield, 130 Wn.2d 464, 473, 925 P.2d 183 (1996). Further, it is "wholly inappropriate" for the judge to suggest a defendant accept a plea deal. State v. Watson, 159 Wn.2d 162, 165, 149 P.3d 360 (2006).

On the other hand, a signed plea statement is strong evidence that the defendant entered the plea voluntarily. State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). An accompanying written statement by the defendant that acknowledges the defendant read and understands the plea agreement and that its contents are true is prima facie evidence that the plea was voluntary. In re Keene, 95 Wn.2d 203, 206-07, 622 P.2d 360 (1980). A defendant who later tries to retract his admission of voluntariness will bear a heavy burden to convince a court that his admission was coerced. State v. Frederick, 100 Wn.2d 550, 558,

674 P.2d 136 (1983). This is especially the case where there are other reasons for pleading guilty. Id.

Pettie claims he involuntarily pleaded guilty due to pressure from the trial court. He contends the trial court's statements on the record convinced him to plead guilty, where he would otherwise have elected not to do so. Pettie relies primarily on Wakefield and Watson.

In Wakefield, the defendant accepted a plea arrangement "[i]mmediately" after the court promised that she would be sentenced within the standard range if she accepted the agreement. Wakefield, 130 Wn.2d at 469. A week prior, the trial court had mentioned to the defendant that a plea offer "would subject her to much less jeopardy" and urged the defendant to heed the advice of her attorneys to plead guilty. Id. at 473 (quoting Report of Proceedings (Dec. 8 1993) at 26). On appeal, the court only explicitly mentioned the sentencing promise when addressing the voluntariness of the plea, but not the statements made a week earlier. "We are mindful of the fact that a trial judge's promise of a standard range sentence could easily sway a defendant to plead guilty." Id. at 475. In Watson, the court on appeal affirmed the trial court's ruling that there was no undue pressure when the defendant entered his guilty plea in front of a new judge a month after the original trial judge made an impermissible statement. Watson, 159 Wn.2d at 165. The original judge had stated "I really think you should take their offer." Id. at 163. But the court granted review to emphasize that it was "wholly inappropriate" for the judge to advise the defendant to 'take [the State's plea] offer.' Id. at 165.

Here, we conclude that Pettie fails to establish that the trial court's actions rendered his plea involuntary. He claims the court convinced him that he must plead guilty by telling him it would be easier to prove second degree assault and that Pettie had a serious decision to make. He also points to the court's statements about a prior defendant who refused a plea agreement, was convicted of his third strike, and was ultimately sentenced to life without parole.

But here, unlike in Wakefield and Watson, the trial court merely informed Pettie of the consequences of proceeding with trial. After Jackson pleaded guilty, the trial court learned that Pettie did not know what the lesser included offense meant to his case and that he had received a plea offer that would allow him to avoid his third strike. Part of Pettie's planned defense was that Narancic's injuries were insufficient for a first degree assault conviction. The trial court said it raised a "red flag" that Pettie did not know about the lesser included offense because Pettie's planned defense could still result in a conviction for second degree assault. VRP (9/12/12) at 148, 149. Unlike in Wakefield, where the trial court promised a more lenient sentence and the defendant relied on such a promise, here the court offered no promise to Pettie. The court simply explained that a conviction for either assault in the first degree or assault in the second degree would be Pettie's third strike and used the example of another defendant to explain that the court does not have discretion in sentencing third-strike convictions. Additionally, unlike in Watson, the court did not urge Pettie to take the State's offer. Rather, the trial court repeatedly told Pettie that any decision should be made between him and his attorney.

This case involves facts more akin to those in State v. Pouncey, 29 Wn. App. 629, 630 P.2d 932 (1981). There, the trial judge met with both attorneys in his chambers and suggested, based on his understanding of the likelihood of a conviction, that the parties explore the possibility of a plea agreement. Id. at 632. Likewise, here the trial court suggested that the parties continue to work out a plea agreement after negotiations had already begun. The defendant in Pouncey was facing a mandatory minimum term if convicted of first degree robbery with a deadly weapon, and the judge noted he had no discretion in sentencing. Id. at 633. The appellate court concluded that the trial court acted as a 'moderator' and that the defendant pleaded guilty for fear of being convicted of more serious offenses with greater consequences. Id. at 637.

Moreover, here, the record reflects several "other apparent reasons," Frederick, 100 Wn.2d at 558, for which Pettie pleaded guilty. First, Jackson's guilty plea impacted the way Pettie viewed his case. In his first attempt to withdraw the guilty plea, Pettie's attorney said Jackson's plea statement implicating Pettie in the crime "essentially[] changed things." VRP (10/5/12) at 3. He stated that "it was because Mr. Jackson pled guilty and the manner in which Mr. Jackson pled guilty" that Pettie ultimately pleaded guilty. Id. at 4. Lastly, he stated that Pettie pleaded guilty "because of Mr. Jackson's plea, in the morning of September 12." Id. at 5. Second, if Pettie went to trial, he faced a possible life sentence without parole. Once he became aware of the lesser included charge, Pettie realized that the likelihood of a life sentence was much greater than he had originally anticipated. Jackson's guilty plea also altered his evaluation of the

likelihood of a conviction because his plea statement implicated Pettie, whereas Pettie had initially thought that Jackson would exculpate him.

In sum, we conclude Pettie has not overcome the heavy burden he must show to prove his guilty plea was involuntary.

Statement of Additional Grounds Claims

Pettie's first claim in his statement of additional grounds is that defense counsel provided ineffective assistance because his two prior convictions for second degree attempted robbery are not "most serious offenses" under RCW 9.94A.030(32). As a result, he contends, he was not facing his third strike under the POAA if he were to be convicted of either first or second degree assault. Pettie is incorrect. Under RCW 9.94A.030(32), "most serious offense" includes "any of the following felonies or a felony attempt to commit any of the following felonies: . . . (o) Robbery in the second degree." Pettie's 1993 and 2004 convictions for second degree attempted robbery are most serious offenses under the statute.

Next, Pettie claims that the trial court improperly imposed an exceptional sentence beyond the standard range. The claim is predicated on Pettie's first claim in his statement of additional grounds; he argues that an exceptional sentence was improper because he was not in fact facing a life sentence. But, as addressed above, the parties, in negotiating a plea agreement, correctly considered his prior convictions for second degree attempted robbery as "most serious offenses" under RCW 9.94A.030(32). The court may impose an exceptional sentence beyond the standard range if the parties stipulate to an

9

exceptional sentence. RCW 9.94A.535(2)(a); In re Breedlove, 138 Wn.2d 298, 310, 979 P.2d 417 (1999). Here, Pettie and the state stipulated that justice was best served by an exceptional sentence. Thus, the court had the authority to sentence Pettie to an exceptional sentence.

Finally, Pettie argues that the standard range was incorrect because the sentencing court used the statutory maximum penalty for the offenses as the presumptive standard sentencing range. This argument is not well taken. Pettie's offender score and the applicable standard range, as set forth in the judgment and sentence, were calculated correctly. The trial court, in its discretion, did not sentence Pettie within the standard range but instead imposed an exceptional sentence based on the plea agreement between Pettie and the State.

Affirmed.

WE CONCUR:

_____, A.C.J.

_____

_____, J.